■ In the Matter of MERVYN DUBNER et al., as Parents and Natural Guardians of MATTHEW DUBNER, a Handicapped Child, Respondents-Appellants, v GORDON M. AMBACH, as Commissioner of Education of the State of

New York, et al., Appellants-Respondents.—Cross appeals from a judgment of the Supreme Court at Special Term, entered June 18, 1979 in Albany County, which granted in part petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Commissioner of Education. Petitioners' handicapped child attended fifth grade in a public school of the local district of his residence during the 1977-1978 academic year. When it appeared that appropriate special services or programs could not be secured for him within New York State for the following year, the East Ramapo Central School District so notified the respondent Commissioner of Education and suggested that the child be placed in the Special Services School District located in Bergen County, New Jersey (see Education Law, § 4402, subd 2, par b, cl [3]). This proposal was rejected because respondents determined that the State Education Department lacked authority to contract with an out-of-State public institution for such purposes. Petitioners, having enrolled their son in the Bergen County facility, thereupon commenced the instant article 78 proceeding to have the determination annulled and to recover the costs of his education. Special Term agreed with their position to the extent of directing respondents to enter into a contract with the Special Services School District of Bergen County, but denied their request for monetary relief, without prejudice to the institution of another action. In our opinion, its order should be modified. We note initially that Special Term correctly decided that the East Ramapo Central School District was not, as respondents urged, a necessary party to this proceeding. While it accepted the recommendation of its committee on the handicapped concerning petitioners' son, the school district was powerless to effectuate his placement in any out-of-State facility (see Education Law, § 4401, subd 2, par a; § 4402, subd 2). The commissioner did not seek to review the school district's action (Education Law, § 4404, subd 2), so that final authority to implement that recommendation must rest with respondents in this case, if it exists at all. Further participation by the local school district is neither contemplated by the pertinent statutes, nor is it essential to resolution of the issues raised in this proceeding. We also agree with Special Term that the Education Department is empowered to enter into contracts with public educational facilities outside this State for the education of handicapped children. Subdivision 1 of section 4407 of the Education Law provides, in relevant part, that: "When it shall appear to the satisfaction of the department that a handicapped child, who, in the judgment of the department can reasonably be expected to benefit from instruction, is not receiving such instruction because there are no appropriate public or private facilities for instruction of such a child within this state because of the unusual type of the handicap or combination of handicaps as certified by the commissioner, the department is authorized to contract with an educational facility located outside the state, which, in the judgment of the department, can meet the needs of such child, for instruction of such child in such educational facility". No restriction on the nature of the foreign institution is imposed, and no valid distinction between private and public facilities appears from the language itself. Nevertheless, respondents maintain that subdivision 2 of section 4401 of the Education Law implies such a limitation in defining "special services or programs." It is true that the definition includes private residential and nonresidential schools outside the State without mention of public facilities, but we do not believe that the definition applies to the broader grant of authority contained in section 4407 of the Education Law. The quoted provision makes no reference to "special services or programs", and the over-all statutory plan reveals that this

narrow definitional phrase was employed to mark a division of responsibilities between local and State officials. Moreover, it would be irrational to construe an enactment designed for the benefit of handicapped children in a manner that would exclude only foreign public schools from its orbit, particularly when, as here, no educational justification for such a distinction has been advanced by respondents. Although respondents' determination of their own powers was in error and was properly annulled, it does not follow that they may be compelled to arrive at a contract with a particular out-of-State public school. The local school district has reported itself unable to secure appropriate services and programs within this State and has obviously rejected private out-of-State facilities as an alternative. Inasmuch as the commissioner has not challenged those actions, the plain language of section 4407 of the Education Law leaves it to the sole judgment of the Education Department to decide which out-of-State public school can meet the needs of the child. Of course, it may adopt local suggestions, but petitioners have no right, statutory or otherwise, to insist on the selection of a specific facility for the education of their son, and the order appealed from should be modified accordingly. Finally, on petitioners' cross appeal, we conclude that incidental monetary relief, while available in certain situations (CPLR 7806; Education Law, § 4404, subd 3), is not presently appropriate. There is a need for additional proceedings in this matter and the costs petitioners have voluntarily incurred may be greater than the expenses associated with the Education Department's eventual contract. In any event, petitioners are not without recourse in this affair and may proceed by way of a separate action. Judgment modified, on the law, by reversing so much thereof as directs respondents to enter into a contract with the Special Services School District of Bergen County, New Jersey, and, as so modified, affirmed, without costs. Kane, Main and Mikoll, JJ., concur; Mahoney, P. J., concurs in a separate memorandum; Herlihy, J., dissents and votes to reverse in a memorandum.

Mahoney, P. J. (concurring). The majority concludes that it would be inappropriate to award petitioners incidental monetary relief in light of the additional proceedings necessary in this matter. While I agree that incidental monetary relief should not be granted to petitioners, I do so in the belief that we are without jurisdiction to make such an award. CPLR 7806 declares that incidental monetary relief may only be granted in an article 78 proceeding when the petitioner "might otherwise recover on the same set of facts in a separate action or proceeding *suable in the supreme court* against the same body or officer in its or his official capacity" (emphasis added). The language requiring a showing that the damages would lie if sought in a separate Supreme Court action against the same respondent was added (L 1962, ch 318, § 27) following a decision holding that the State had surrendered its sovereign immunity against the prosecution of incidental damage claims in mandamus proceedings *(Matter of Karaffa v Simon,* 29 Misc 2d 219, 220, revd on other grounds 14 AD2d 978; see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7806.01). It, therefore, seems clear that the Legislature, in 1962, dispelled any notion that the State had consented to a limited waiver of its immunity in CPLR 7806 (see Siegel, New York Practice, § 570, p 801). Accordingly, the petitioners in the instant proceeding must resort to a suit in the Court of Claims if they are to recover money from the State based on the respondents' failure to exercise their statutory powers.

Herlihy, J. (dissenting). At issue in this case is the power of the respondents to contract with an out-of-State public school. As found by the

majority, there can be no dispute but that the selection of an appropriate school and entering into a contractual arrangement is solely for the respondents. If I understand the commissioner's argument correctly, he is stating that section 4401 of the Education Law defines a "handicapped child" and "Special *services* or programs". Section 4407 sets forth special *provisions* relating to instruction of such a handicapped child, and the department is authorized to contract with an educational facility located outside the State. To determine what constitutes an "educational facility" outside the State, it is necessary to revert back to subdivision 2 of section 4401, which provides, as pertinent: "f. Contracts with private non-residential schools which have been approved by the commissioner and which are outside of the state for special services or programs * * * h. Contracts with private residential schools which have been approved by the commissioner and which are outside the state for special services or programs." Based upon this reasoning, the commissioner, through his counsel, concluded his authority was limited to private nonresidential schools. In my opinion, this is a correct interpretation of what might appear to be an ambiguity between the sections, but which in reality is not such. Accordingly, the commissioner's determination properly interpreted the statute and there was no error of law. I would further note that there appears to be a valid distinction between nonresidential public and nonresidential private schools. By way of contract as authorized in section 4407, the commissioner can dictate as to nonresident private schools the terms and conditions thereof as to the special services and programs. It would be doubtful if he could so contract with a nonresidential public school, an agency of a foreign State. The judgment of Special Term should be reversed and the determination should be confirmed.