MICHAEL M. and Janice M., Plaintiffs,

v.

BOARD OF EDUCATION OF the NEW YORK CITY SCHOOL DISTRICT, Thomas Sobel, as Commissioner of Education of the State of New York, Defendants.

HARRY O. and Sue O., Plaintiffs,

v.

BOARD OF EDUCATION OF the NEW YORK CITY SCHOOL DISTRICT, Thomas Sobel, as Commissioner of Education of the State of New York, Defendants.

Nos. 87 CV 0528 (JBW), 87 CV 0531 (JBW).

United States District Court, E.D. New York.

May 27, 1988.

Rebell & Katzive by Marion C. Katzive, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of State of N.Y. by Martha O. Shoemaker, Asst. Atty. Gen., New York City, Peter L. Zimroth, Corp. Counsel for City of N.Y. by Suzanne L. Bailey, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

In each of these actions the plaintiffs are parents of a handicapped child. They were successful in procuring educational relief at the administrative level pursuant to the applicable provisions of the Education of All Handicapped Children Act (EHA). 20 U.S.C. §§ 1401, *et seq.* They now seek payment of attorney's fees incurred in the administrative proceedings from both defendant Board of Education and defendant Commissioner of Education, pursuant to EHA amendments made by the Handicapped Children's Protection Act of 1986 (HCPA). Pub.L. No. 99–372, 100 Stat. 796–98 (1986).

Defendant Commissioner of Education moves to dismiss on the grounds that 1) the actions are time barred by a four month short-statute of limitations; 2) the Eleventh Amendment to the United States Constitution bars a federal court from ordering recovery from a state; and 3) the Commissioner is not a proper party to these proceedings.

Only the last of these contentions has merit. Plaintiffs' actions are timely; they are governed by a three year statute of limitations, not the four month statute defendant claims should apply. The Eleventh Amendment does not bar plaintiffs' actions against the Commissioner for attorney's fees; Congress has effectively abrogated the sovereign immunity of the states in suits of this nature in federal court pursuant to its powers under the Fourteenth Amendment. Since the Commissioner of Education is not a proper party to this action his motion to dismiss must be granted.

*The Education of All Handicapped Children Act and The Handicapped Children's Protection Act of 1986*

The EHA represents "an ambitious federal effort to promote the education of handicapped children...." *Board of Educ. of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982). It was enacted

in recognition of the facts that millions of handicapped children were not receiving appropriate educational services in public schools, that state and local educational agencies have both the ability and the responsibility to provide appropriate educational services for all handicapped children, but lack the financial resources to fulfill that duty, and that it is in the national interest for the federal government to assist state and local agencies' efforts to educate handicapped children.

*Riley v. Ambach,* 668 F.2d 635, 636–637 (2d Cir.1981) (citation omitted).

Passed by Congress in 1975, the EHA provides federal money to assist state and local agencies in educating handicapped children. Funding is conditioned upon a state's compliance with extensive goals and procedures of the EHA designed to ensure that handicapped children are given access to public education. Private parties such as the parents may sue to enforce EHA rights. *Moore v. District of Columbia,* 666 F.Supp. 263, 264 (D.D.C.1987).

In July of 1984, the Supreme Court held that an award of reasonable attorney's fees was not available to the prevailing party in an action brought under the EHA. *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Acting "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent," *Fontenot v. Louisiana Bd. of Elementary and Secondary Education,* 805 F.2d 1222, 1223 (5th Cir.1986), Congress passed the HCPA in August, 1986. The HCPA overturned the Supreme Court's holding in *Smith v. Robinson* by explicitly providing for the recovery of attorney's fees for plaintiffs asserting claims to enforce rights that arise under the EHA. It reads:

> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B). The act was made retroactive to permit recovery of fees for actions brought before the date of the *Smith* decision which was pending on that date as well as for any action brought after the decision was issued. Pub.L. 99–372 § 5, 100 Stat. 796, 798 (1986).

*New York State Education Law*

Primary responsibility for education has traditionally been, and still is, left to the states. To understand the facts of this case a brief exposition of New York State procedures for evaluation and placement of handicapped children, and for appealing those decisions, is necessary.

In New York "[a] person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition." N.Y. Educ.Law § 3202(1). A person eligible to receive public school education under section 3202(1) is deemed a child or pupil "with a handicapping condition" when, for mental, physical, or emotional reasons, he can receive appropriate educational opportunities only from a program of special education. N.Y.Educ.Law § 4401(1); N.Y. Comp.Codes R. & Regs., Tit. 8, § 200.1(cc) (1987) (Commissioner's Regulations) (hereinafter 8 N.Y.C.R.R.).

Programs of special education include those in New York public schools, as well as those provided through contracts with private schools within and outside the state. N.Y.Educ.Law § 4401(2)(a)–(h); 8 N.Y.C.R.R. § 200.1(hh). A child with a handicapping condition is only eligible for placement in a private school if no appropriate public school placement is available. *Matter of Handicapped Child,* 23 Educ. Dept.Rep. 18, 21 (1983); 8 N.Y.C.R.R. § 200.6(h)(1)(iii) and (h)(3)(i).

The mechanics for placement of a child in such non-public programs are as follows: A Committee on the Handicapped (COH) is established by the board of education of each school district. N.Y.Educ.Law § 4402(1)(b)(1). It is responsible for evaluating the individual needs of each child. *Id.,* § 4402(1)(b)(3)(a). The COH must recommend to the board an appropriate program of special education, including, if necessary, private placement. *Id.,* § 4402(1)(b)(3)(b); 8 N.Y.C.R.R. § 200.4(c).

Before a private school can be used for placements it must be approved by the Commissioner of Education. *Lombardi v. Nyquist,* 63 A.D.2d 1058, 1059, 406 N.Y.S. 2d 148, 150 (3d Dept.1978), *lv. to app. den.,* 45 N.Y.2d 710, 409 N.Y.S.2d 1029, 381 N.E. 2d 616 (1978); N.Y.Educ.Law §§ 4401(2)(e)–(h) and 4402(2)(b)(2); 8 N.Y.C. R.R. § 200.7(a). If the recommendation is for a private in-state school, and the school

is on the Commissioner's approved list, then the Board of Education is empowered to contract with the school for the child's placement. *See* N.Y.C.R.R. § 200.7(a). This contract is subject to final approval by the Commissioner of Education.

When the Board, following the recommendation of the COH, cannot secure an appropriate program of special education within the state, an out-of-state placement may be considered. The State Education Department maintains a register of such approved educational facilities. Only the Commissioner and his representatives can enter into a contract with an out of state facility. "[T]he school district [is] powerless to effectuate his placement in any out of State facility ... [while] the Education Department is empowered to enter into contracts with public educational facilities outside this State for the education of handicapped children." *Dubner v. Ambach*, 74 A.D.2d 949, 950, 426 N.Y.S.2d 164, 166 (3d Dept.1980), *aff'd*, 52 N.Y.S.2d 910, 437 N.Y.S.2d 659, 419 N.E.2d 337 (1981); N.Y.Educ.Law. §§ 4407(1) and (4). Placement in a private out-of-state school may be terminated only by the Commissioner. *Matter of Four Handicapped Children*, 21 Educ.Dept.Rep. 514 (1982).

If parents of a handicapped child are dissatisfied with any aspect of their child's classification or placement, the Board of Education, upon notice, appoints an impartial hearing officer to hear the appeal and make recommendations. An appeal from this hearing officer's decision may be taken to the Commissioner of Education. N.Y. Educ.Law § 4404(1). If dissatisfied by the decision of the Commissioner, the parents may seek judicial review in New York Supreme Court pursuant to Article 78 of the N.Y.C.P.L.R. or in federal district court under the EHA. N.Y.Educ.Law § 4404(3); 20 U.S.C. § 1415(e)(2).

*Facts*

### RYAN M.

Plaintiffs Michael and Janice M. are the parents of Ryan M., a handicapped child born in October, 1979. In August 1984 the Committee on the Handicapped in Ryan's local school district classified Ryan as Multiply Handicapped (Emotionally Disturbed/Neurologically Impaired/Speech Impaired), and developed an Individualized Education Program ("IEP") for him. The IEP prescribed an appropriate student/teacher ratio, as well as speech and language therapy, and bore the notation "NPSA," "no public school appropriate." Following the recommendation of the COH, the Board of Education applied to the Commissioner of the State Education Department for approval of Ryan's placement in a non-public school at public expense. *See* 8 N.Y.C.R.R. § 200.6(h)(2).

In a letter dated September 21, 1984, the Commissioner's Regional Associate notified the Board of Education that non-public school placement was not supported by the record. (Throughout this memorandum the aides of the Commissioner are treated as his alter ego and considered the Commissioner.) The associate wrote:

[the recommended non-public school placement] cannot be approved at this time for the following reasons:

1. Materials submitted for review did not contain a medical examination for review.

2. Materials submitted for review do not document severe enough needs to warrant placement in a non-public educational setting. There is no indication that the full range of Citywide programs available have been explored.

The Regional Associate then instructed that "[t]his case should be reviewed promptly by the District COH for any needed corrections, additions, and/or alternate placement recommendations."

In October 1984 Ryan M. reached his fifth birthday, becoming entitled to attend school in New York State at public expense. Plaintiffs, his parents, were advised by the Board of Education that it would be unable to place Ryan in a public or non-public school in a timely manner. Plaintiffs then enrolled Ryan at the League School, a non-public school for severely handicapped children approved by the State Commissioner of Education and located in New York State.

In a letter dated December 21, 1984 the Commissioner's Regional Associate reiterated that Ryan's placement could not be approved for public funding and added that "[o]ur rejections of the original [placement recommendations] ... are predicated on our belief that an appropriate program for the child in question is available in the public sector. We cannot approve a placement we knew to be inappropriate when it was first submitted...." Plaintiffs then requested an impartial due process hearing in accordance with the EHA, 20 U.S.C. § 1415(b)(2), on the matter of the classification and placement of Ryan.

A hearing was held on May 22, 1985 to determine whether Ryan's handicapping condition made the League School an appropriate placement for him, and whether there were any public special education programs that would suit the child's needs in place of the League School. After review of extensive evidence, the Hearing Officer determined that the League School was an appropriate placement for Ryan and that there was no acceptable alternative presently in the New York State public school system. She then ordered that "Ryan M's education at the League School be publicly funded for the school year 1984–5 and until an appropriate public school placement is provided by the Board of Education." The decision was not appealed, and the Commissioner of Education subsequently began publicly funding Ryan M's placement at the League School.

## RICHARD O.

Plaintiffs Harry and Sue O. are the parents of Richard O., a handicapped child born in November, 1966. Richard had been determined to be in need of special education by reason of emotional disability. He never attended the public schools of New York. During the 1983/84 and 1984/85 school years Richard was approved for and attended at public expense the Pathway School, a non-public school for students with handicapping conditions in Audobon, Pennsylvania.

In a letter dated September 24, 1984 the New York Commissioner of Education's Di-

rector of Program Monitoring notified Richard O.'s local COH that "the Pathway School is approved by New York State to serve students who are moderately emotionally disturbed/severely learning disabled, who may or may not be functioning in the retarded range *and who are between the ages of 8 and 16 years.*" (emphasis added). At that time Richard was over 16 years old and beginning his second year at Pathway. The COH believed that the Pathway School was an appropriate placement for Richard and recommended that the placement, and public funding, be continued for the 1985–86 school year.

On July 23, 1985 the Commissioner's Regional Associate sent a letter to the Board of Education reiterating the reminder about the age–16 rule. The communication stated:

The enclosed [form] has been reviewed for the completeness of materials and the appropriateness of recommendations. It cannot be approved at this time for the following reasons:

The COH was notified on 9/24/84 (see attached letter) that a 1985–86 reapplication would not be considered for Richard as he has aged out of the Pathway School. The school is approved to serve students *only* to age 16. An alternative placement recommendation must be made for 1985–86.

This case should be reviewed promptly by the District COH for an alternative placement recommendation.

(emphasis in original).

Neither the COH nor the Board of Education made any alternative placement recommendations. In the absence of such recommendations Richard's parents re-enrolled him at the Pathway School in September, 1985. On September 4, 1985 plaintiffs requested an impartial due process hearing in accordance with the EHA, 20 U.S.C. § 1415(b)(2), "with regard to the failure of the Board to assure a free and appropriate education for Richard for the 1985–1986 school year."

A hearing was held on November 8, 1985. In a brief opinion issued December 2, 1985 the Hearing Officer stated that

"Education Law Section 4404(4) requires that a child remain in his or her 'then current educational placement' pending completion of the due process review procedures."

This decision was predicated on New York Education Law Section 4404 and 20 U.S.C. Section 1415.

Section 4404(4) states:

During the pendency of any proceedings conducted pursuant to this section ..., unless the commissioner or local school district and the parents or persons in parental relationship otherwise agree, the child shall remain in the then current educational placement of such child....

20 U.S.C. § 1415 is captioned "Procedural Safeguards." Section 1415(e)(3) states:

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

Finding that the Pathway School was Richard's "current educational placement," the Hearing Officer ordered "that the placement of [Richard O.] at The Pathway School be publicly funded pending completion of the proceedings initiated by the request for hearing dated September 4, 1985." The decision was not appealed, and the Commissioner subsequently reinstated public funding for Richard O. at the Pathway School.

It should be noted that in neither of these cases was the Commissioner a party to the impartial due process hearing. The parties were the local board and the plaintiffs in both instances.

On August 28, 1987, a little over two years after Congress allowed attorney's fees under the HCPA, the parents of Ryan and of Richard commenced separate actions in this court against the Board of Education of the New York City School District for attorney's fees amounting to $4,431.90 and $3,554.90, respectively. On December 28, 1987 they filed amended complaints naming as an additional defendant Thomas Sobel, as Commissioner of Education of the State of New York.

*Statute of Limitations*

■ Congress did not establish a statute of limitations for actions brought in federal court under either the EHA or the HCPA. A void such as this is commonplace in federal statutory law. *Board of Regents v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980). If any time limitation is to be imposed upon the bringing of suits in the federal courts, recourse must be had to a state statute of limitations. As Judge Friendly wrote in *Moviecolor Limited v. Eastman Kodak Company,* 288 F.2d 80 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961),

It has also been long established that when Congress created a federal right but did not prescribe a period for its enforcement, Federal courts will borrow the period of limitation prescribed by the state where the court sits.... The basis of this was that Congress could not have intended an unlimited period for enforcement as would otherwise exist in actions at law, and that, selection of a period of years not being the kind of thing judges do, federal judges should borrow the limitation statutes of the states where they sit.

*Id.* at 83 (citations omitted). We look to New York State law to borrow "the state law of limitations governing an analogous cause of action," *Board of Regents v. Tomanio,* supra, 446 U.S. at 484, 100 S.Ct. at 1795, to apply in the proceedings now before us.

In *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985), the Supreme Court established a three-part inquiry to guide the selection of the state statute of limitations governing a federal claim:

■ consider whether state law or federal law governs the characterization of

[the] claim for statute of limitations purposes. [2] If federal law applies, ... decide whether all [claims arising under a particular federal law] should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented.... [and 3] characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle.

105 S.Ct. at 1943. What is clear from the second step is that different portions of federal statutes may be characterized differently for statute of limitations purposes.

In the case at bar federal law governs the characterization of the claim. In *Garcia* the Court noted that the "characterization of § 1983 for statute of limitations purposes is derived from the elements of the cause of action, and Congress' purpose in providing it." *Id.* The first element in a cause of action for attorney's fees brought under the EHA as amended by the HCPA, 20 U.S.C. § 1415(e)(4)(B), is that the claim results from an "action or proceeding brought under the [EHA]." This is a matter of federal law. Congress' purpose in amending the EHA was to afford federal "due process procedures, including the right of litigation, if that became necessary, to all parents," so that they could "access the full range of available remedies in protecting their handicapped child's educational rights." Senate Report No. 99–112, 99th Cong., 2d Sess. 2, 17, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1799, 1806. The rights the EHA now ensures include equal protection, due process, and those specifically enumerated in the Act's earlier provisions, matters of federal law. *Id.*, Senate Report No. 99–112 at 1, *reprinted* at 1798.

In this Circuit, N.Y.C.P.L.R. Article 78, governed by a four month statute of limitations, has been held to provide the state analog to actions brought under the EHA to enforce the educational rights of handicapped children. *Adler by Adler v. Education Dept. of State of N.Y.*, 760 F.2d 454 (2d Cir.1985). There is no persuasive reason, however, to characterize for statute of

limitations purposes actions brought under the HCPA for attorney's fees in the same way EHA actions have been characterized by the *Adler* court. *See Robert and Lena D. v. Sobel*, 688 F.Supp. 861, 864 (S.D. N.Y.1988).

In *Adler* parents of a handicapped child brought an action under the EHA against the Commissioner of Education and the New York City Board of Education for reimbursement of their child's tuition costs. The Court of Appeals held that the action, brought under section 1415(e)(2) of the EHA, was "essentially an appeal from administrative proceedings previously held first by the COH and followed by an intermediate appeal to the Commissioner." *Id.* at 457. Thus, the court reasoned, it was analogous to the modified Article 78 proceeding provided for in N.Y.Educ.Law § 4404(3) used to review procedural irregularities.

The Court of Appeals noted that significant policy considerations underlying the EHA warranted the application of the short four-month statute of limitations. "Were a three-year statute of limitations to apply, a child incorrectly classified or placed could stay in an inappropriate program for up to three years after a final administrative determination before a federal action to review that determination need be commenced." *Id.* at 459. The shorter statute, the court pointed out,

> would result in annual review being reviewed before so much of the school year is past as to make the issues academic.... These policy considerations are only reinforced by Congress' concerns with promptness expressed in the [EHA]'s legislative history....

*Id.* at 459–60.

The legal and policy arguments that support the holding in *Adler* do not support characterizing a separate action for attorney's fees in the same way for statute of limitations purposes. Unlike the clear analogy that exists between an appeal from administrative proceedings brought under the EHA and New York's modified Article

78 proceedings, there is no similarity between an action for attorney's fees and an action to appeal a final administrative determination. In an action for attorney's fees speed is not of the essence.

No policy supports a four month short-statute in an action for attorney's fees. In a separate action for fees there exists no emergency situation; concerns about the impact of a three year statute of limitations on educational planning, as set forth in *Adler*, 790 F.2d at 459, are not warranted. The needs and general welfare of the handicapped child would no longer be of concern, since the administrative proceeding would have resolved those issues before the action for fees commenced.

This conclusion is buttressed by the action of Congress in making the fee provisions retroactive, a point already noted. A short statute would tend to negate Congressional intent to encourage fee petitions for proceedings brought prior to adoption of the statute.

Finally, it is necessary to "decide which state statute provides the most appropriate limiting principle". *Wilson v. Garcia*, supra, 105 S.Ct. at 1943. New York Education Law has no analogous action for a fee claim. The closest applicable general statute of limitations under New York law is the three-year statute governing "an action to recover upon a liability ... created or imposed by statute...." N.Y.C.P.L.R. 214(2). "The liability is one created by statute and thus covered by C.P.L.R. 214(2) only if it did not exist at common law or one which would not exist but for the statute." *Loengard v. Santa Fe Industries, Inc.*, 573 F.Supp. 1355, 1358 (S.D.N.Y. 1983); *Aetna Life and Casualty Co. v. Nelson*, 67 N.Y.2d 169, 501 N.Y.S.2d 313, 492 N.E.2d 386 (1986).

The cause of action for fees would not exist but for the presence of the HCPA. A separate action for attorney's fees did not exist at common law. *See* Senate Report No. 99–112, 99th Cong.2d Sess. 2, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1799. The three year statute of limitations applies to all actions for attorney's fees brought under the EHA, as amended by the HCPA, 20 U.S.C. § 1415(e)(4)(B). See *Robert and Lena D. v. Sobel*, 688 F.Supp. 861, 864 (S.D.N.Y.1988). Since the HCPA's "adopted" statute of limitations could not have begun to run before the HCPA itself was created, less than two years ago, plaintiffs' present action is timely.

*The Eleventh Amendment*

█ Even if a state does not consent to waive its sovereign immunity under the Eleventh Amendment, Congress may subject states to suit in federal court when it acts pursuant to its powers under section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Courts have uniformly held that Congress acted pursuant to its Fourteenth Amendment powers in enacting the EHA, and thereby effectively abrogated the sovereign immunity of the states from suit in federal court. *Fontenot v. Louisiana Board of Elementary and Secondary Education*, 835 F.2d 117 (5th Cir.1988) (action for attorney's fees brought under the EHA); *David D. v. Dartmouth School Committee*, 775 F.2d 411 (1st Cir.1985) (action brought under the EHA to challenge handicapped child's proposed educational program), *cert. denied*, 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986); *Robert and Lena D. v. Sobel*, 688 F.Supp. 861, 864 (S.D.N.Y. 1988); *Counsel v. Dow*, 666 F.Supp. 366 (D.Conn. 1987) (action for attorney's fees brought under the EHA); *Antkowiak By Antkowiak v. Ambach*, 653 F.Supp. 1405 (W.D.N.Y.1987) (action brought under the EHA against Commissioner of Education of New York to require Department to pay for out-of-state placement), *rev'd on other grounds*, 838 F.2d 635 (2d Cir.1988).

The legislative history supports these holdings. The preamble of the EHA is quite explicit: "The Congress finds that ... it is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of handicapped children *in order to assure equal protection of the*

*law."* 20 U.S.C. § 1400(b)(9) (emphasis added). In addition, the legislative history of the EHA contains the following reference to the Fourteenth Amendment:

> The Committee rejects the argument that the Federal Government should only mandate services to handicapped children if, in fact, funds are appropriated in sufficient amounts to cover the full cost of this education. The Committee recognizes the State's [sic] primary responsibility to uphold the constitution of the United States and their own State Constitutions and State laws *as well as the Congress' own responsibility under the 14th Amendment to assure equal protection of the law.*

S.Rep. No. 168, 94th Cong., 2d Sess. 22 (1975), *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1446 (emphasis added).

Congress acted within its Fourteenth Amendment enforcement power when it enacted the EHA, and when it amended the EHA to permit recovery of reasonable attorney's fees. Consequently, the Eleventh Amendment is not a bar to plaintiffs' actions for fees against the Commissioner of Education of the State of New York.

*Recovery of Attorney's Fees From The Commissioner of Education*

■ In the cases before us the Commissioner's role, acted out through his surrogate, was to ensure that local Boards of Education follow state law. He made general findings as implementor of the legislature's intent to assist the decisionmakers at the Board of Education level. *See* N.Y. Educ.L. § 308 (duty of Commissioner to enforce all education laws and rules of regents). Thus, it is undesirable to hold him responsible for attorney fees. *See Burr v. Ambach*, 683 F.Supp. 46 (S.D.N.Y. 1988) (action against Commissioner for attorney's fees dismissed; "novel proposition that attorney's fees may be levied against a decisionmaker.").

Handicapped children are generally evaluated and recommended for placement through a joint effort between the local board of education and COH. These bodies, rather than the Commissioner, are in effect the placement officers. If the recommended placement is for a private school, the Commissioner necessarily becomes involved to a limited extent, and may be called upon to help implement the decision below by approving the contract between the Board and an in-state school, or by contracting directly with an out-of-state school. Although his advisory and supervisory duties at times place him in a position to approve and disapprove individual placements, when participating directly in the placement process he follows pre-determined state guidelines which reflect the mandate of the legislature. He implements policy on a large scale, and not as a party in a particular placement proceeding.

This supervisory role was the one he assumed in the case of Ryan M. Ryan M.'s initial placement recommendation to the League School was not approved by the Commissioner because he concluded that the record did not support the contention that Ryan could not be placed in a public school. The additional evidence produced at Ryan's due process hearing which led to a contrary conclusion—that no public program of education would adequately suit Ryan's needs—was not considered by the Commissioner at the time he made his decision. Satisfied on the expanded record that Ryan's placement would be in compliance with state rules, he then approved public funding.

Likewise in Richard O.'s case, the Commissioner followed state guidelines in notifying the Board of Education of the student's prospective problem and asking that an alternative recommendation be made. The Hearing Officer's subsequent decision to keep Richard at Pathway was based on the Board of Education's failure to recommend an appropriate alternative placement.

In the cases of both Ryan M. and Richard O., the Commissioner never realized the full potential of his role as adjudicator, as he did in *Burr v. Ambach*, because there was no appeal from the decision of the hearing officer and the Board of Education and Commissioner promptly complied. In this respect, however, the case now before us also lacked the special cir-

**1004**

cumstances of *Robert and Lena D.* where Chief Judge Brieant characterized the Commissioner's role as in effect one of a participant at the hearing and thus amenable to an order requiring him to pay the plaintiffs' legal fees. *Robert and Lena D. v. Sobel,* 688 F.Supp. 861, 866–67 (S.D.N.Y. 1988).

It is not disputed that plaintiffs may recover attorney's fees in full from the Board of Education. Thus a decision denying fees against the Commissioner will not frustrate the purposes of the EHA and HCPA to establish "an enforceable right to a free appropriate public education for all handicapped children and [to establish] due process procedures, including the right to judicial review, to protect those rights." S.Rep. No. 99–112, 99th Cong.2d Sess. 1, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798–1799. While it is desirable to have a single rule under the HCPA that applies to all kinds of cases that involve the Commissioner, this problem of divided responsibility in educational matters is an issue for the state, not the federal courts. So long as some level of state and municipal government can respond in fees, the federal policy of enforcement is satisfied. Here the educational needs of the handicapped children, Ryan M. and Richard O., have been met. Their parents will presumably be able to recover their attorneys' fees from the Board of Education. The purposes of the EHA and the HCPA have been effectuated.

The motion to dismiss the case against the Commissioner is granted. No costs or disbursements are awarded.

SO ORDERED.