OPINION OF THE COURT
Joseph Harris, J.
In United States v Halper (490 US 435 [decided May 15, 1989]), the United States Supreme Court held that a civil penalty for filing a false claim with the Government, after criminal conviction and punishment for the same act, violated the prohibition against double jeopardy where the amount of the civil penalty bore no rational relation to the Government’s loss.
Professional Care, Inc. (hereinafter referred to as PCI) is a New York proprietary corporation organized to provide, through personal care aides, homemaker services under the New York State plan for medical assistance known as the New York Medicaid program (hereinafter referred to as Medicaid). Defendants Martin Weissman and Israel Cohen are, respectively, president and executive vice-president of PCI. Defendants Harriet Weissman and Arline Cohen were at all *784 times relevant herein the respective spouses of Martin Weiss-man and Israel Cohen,[1] and employees of PCI.
PCI operates through formal contracts with the several county departments of social services throughout the State, under the over-all supervision of the New York State Department of Social Services and the regulations promulgated thereby (18 NYCRR 505.1 et seq.).
In August 1986, PCI was indicted in Albany County for falsifying business records in the first degree and grand larceny in the second degree, it being alleged that PCI made false entries in the personnel files of diverse of its employees to conceal from government auditors that said employees lacked the training and qualifications required by the regulations of the New York State Department of Social Services (18 NYCRR 505.14 [d], [e]) to be personal care aides, and for whose homemaker services PCI had received payment from the State of New York, all for the purpose of concealing that these payments constituted a larceny; and it was further alleged that these payments did in fact constitute a larceny. No criminal charges other than these — for conduct occurring in Albany County — have heretofore been brought against the corporation for conduct occurring elsewhere than in Albany County.
On February 23, 1988, at the close of the People’s case during the criminal trial, PCI, pursuant to a plea agreement, pleaded guilty to the charges of falsifying business records and grand larceny, and agreed to pay $1,000,000 restitution, solely with respect to its conduct in Albany County as set forth in the indictment, and to pay a fine of $250,000. The People had alleged an unlawful gain of $1,821,693; PCI, although not agreeing that its unlawful gain was $1,821,693, nor even $1,000,000 — only that it was in excess of the statutorily required $1,500 — chose on the record not to contest the amount of restitution as $1,000,000, and waived a restitution hearing to determine the exact amount of its unlawful gain.[2] PCI, *785 through its authorized counsel, acknowledged that neither its plea of guilty nor the sentence imposed in any way limited its civil liability. Both the restitution of $1,000,000, and the fine of $250,000, have heretofore been paid.
Thereafter the State brought the instant civil action, setting forth nine causes of action: "forfeiture of the proceeds of a crime” (first cause of action); "monies had and received” (third and fifth causes of action); "unjust enrichment” (seventh cause of action); "overpayment of public funds” (eighth cause of action); "intentional misrepresentation” (ninth cause of action), and "treble damages” (second, fourth and sixth causes of action). The first two causes of action are based solely on conduct occurring in Albany County; the third, fourth and sixth causes of action are based solely on conduct occurring outside of Albany County; the seventh, eighth and ninth causes of action are based on conduct appearing to have occurred both in and outside of Albany County.
Subsequently, the State moved before the Honorable Robert F. Doran, Supreme Court Justice, to whose IAS Part the case was assigned,* [3] for partial summary judgment, to wit, with respect to the second cause of action, seeking treble damages for the alleged unlawful payments which were the subject matter of the Albany County criminal indictment, for which restitution was agreed to and made in the amount of $1,000,000. Justice Doran decided the motion in an order entered November 18,1988; on appeal by the State, the Appellate Division, in an opinion dated February 22, 1990, reversed Justice Doran and directed the trial court to enter summary judgment in favor of the State and against PCI in the sum of $2,000,000, being treble damages less the $1,000,000 restitution already paid. This court, pursuant to the Appellate Division’s direction, signed such order and judgment on March 6,1990.
In the meantime, while the appeal to the Appellate Division by plaintiffs from Justice Doran’s order of November 18, 1988, denying summary judgment, with respect to the second cause of action of the complaint, was still pending, defendants, on January 5, 1990, themselves moved for summary judgment *786 dismissing each of the causes of action against them upon the two grounds hereinafter set forth. Thereafter, following the decision of the Appellate Division reversing Justice Doran’s order, and the entry by this court of its order and judgment on March 6, 1990, pursuant to the direction of the Appellate Division, granting summary judgment to the State on the second cause of action in the amount of $2,000,000, defendant PCI further moved, pursuant to CPLR 2201, for a stay of execution of said order and judgment.
Respecting their affirmative motions for summary judgment, defendant’s arguments are twofold. Firstly they argue that the State has suffered no compensable loss. Citing Schank v Schuchman (212 NY 352 [1914]), they argue that where a party breaches a contract rendering it unenforceable, the law will not allow the other party to recover payments already made unless those payments exceed the fair value of the services received.
The reliance of defendants on Schank (supra) is ill-founded. In Schank the defendant had contracted to sell wagons to the plaintiffs. Plaintiffs discovered, after four years, that the defendant had secretly been bribing plaintiffs’ employees hired to inspect and approve the wagons prior to each sale. Plaintiffs sued the defendant for all payments made under the contract, contending that the entire contract was a fraud, that the defendant was guilty of a crime, and that the contract was therefore completely unenforceable. The Court of Appeals agreed that the contract was unenforceable, but held that although plaintiffs were the victims of fraud, they could not recover moneys paid for wagons already delivered. Recovery was barred upon the grounds that the plaintiffs, having failed to establish that there was anything wrong with the wagons provided by the defendant, "had a just return for every dollar they have parted with”. (Schank v Schuchman, supra, at 358.) Therefore, the defendant was allowed to "keep the money with good conscience.” (Supra, at 358.) Wrote the court: "If the defendant were suing the plaintiffs for the price, and the court were to deny him relief, its refusal would not rest upon the ground that it would be against good conscience for him to have the money. The basis of its refusal would rather be that because of his illegal acts the law would leave him where it found him. * * * In this case it finds him in a situation altogether different. He has received the money, and the plaintiffs are trying to take it away from him. The law may at times refuse to aid a wrongdoer in getting that which good *787 conscience permits him to receive; it will not for that reason aid another in taking away from him that which good conscience entitles him to retain.” (Supra, at 359.)
However, Schank v Schuchman (supra) is entirely distinguishable from the instant case. There, despite the fact that the defendant intended to foist upon the plaintiffs wagons that did not meet agreed-upon standards, and to that end bribed plaintiffs’ inspectors, in fact the wagons delivered did meet the agreed-upon standards. Whether or not the wagons met the prescribed specifications could easily be ascertained, and indeed they did, or at least plaintiffs failed to show that they did not. Accordingly, on the evidence the plaintiffs had received the bargained-for consideration.
Not so in the instant case. In the instant case the bargained-for consideration was documented, trained, medically well, supervised home personal care providers. The contracts, and the rules and regulations of the New York State Department of Social Services required that the personal care aides provided by PCI be trained to take care of, in many instances, elderly, infirm and fragile Medicaid recipients; that they receive medical examinations in order to safeguard the recipients of their services from dangerous and perhaps life-threatening infection and communicable diseases, and that this training and physical health be documented for the purpose of ascertaining and validating that Medicaid recipients were receiving competent service. This was an important and material part of the bargained-for consideration.
There is a big difference between a contract for a wagon and a contract for personal services. Whereas in the former, adherence to specification can be ascertained at any time, even long after delivery and acceptance, such is not so with the latter, and in the instant case. If the personal care aides provided by PCI were not specifically trained and medically examined prior to the services rendered by them, their conformity to required standards and the competency of the services rendered in upwards of the hundreds of thousands of cases handled by the New York Medicaid program cannot reasonably and readily be ascertained after the fact. Nor is there any burden on the State to have to prove the noncompetency of the services rendered. Documented competency was an important and material part of the bargained-for consideration. It is alleged that this documented competency was absent in the myriad cases encompassed in the complaint herein; and indeed defendants admitted as much respecting *788 the cases arising in Albany County in their criminal pleas to the Albany County indictment. Under the circumstances of the instant case, if the State can show that payments were made for personal care aides who were not trained and/or medically examined prior to their service, or that such competence was not properly documented pursuant to the rules and regulations of the New York State Department of Social Services, the State is entitled to recover. Thus there is a factual issue herein that defeats a motion for summary judgment.[4]
Passing now to the major argument of the defendants — the holding of the United States Supreme Court in United States v Halper (490 US 435, supra) — once again, both procedurally and substantively, the reliance of the defendants, under the facts and circumstances of the instant case, is ill-founded.
In Halper (supra), the manager of a medical laboratory company, which provided medical service to patients eligible for benefits under the Federal Medicare program, submitted 65 false claims for reimbursement by the Federal Government, which overpaid the company a total of $585 on said claims. The manager was indicted and convicted on 65 counts of submitting false claims in violation of 18 USC § 287, a penal statute and sentenced to two years’ imprisonment plus a $5,000 fine. The Federal Government subsequently brought a civil action under the Federal False Claims Act (31 USC *789 §§ 3729-3731) which at that time imposed upon a person knowingly making a false statement to get a false claim approved (1) a civil penalty of $2,000 for each false claim, (2) an amount equal to twice the amount of damages sustained by the Government, and (3) the costs of the civil action.[5] Under this formula, factoring in a $2,000 penalty on each of 65 counts, the authorized recovery by the Government would be in excess of $130,000, against an actual loss of $585 plus the costs of investigating and prosecuting the case. The United States Supreme Court held that a civil sanction that cannot fairly be said solely to serve a remedial purpose — bearing some rational relation to the Government’s actual losses plus the costs of investigating and prosecuting the case — but rather can be explained only as also serving either a retributive or deterrent purpose, is punishment for purposes of the Double Jeopardy Clause of the US Constitution’s Fifth Amendment, and remanded the case to the District Court to permit the Government to prove the extent of its injuries.
Halper (supra) is as important for what it does not hold as for what it does hold. The court stated that "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.” (United States v Halper, 490 US, supra, at 440.) "[I]n determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.” (490 US, supra, at 447, n 7.) "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.” (490 US, supra, at 448.)
"Nothing in today’s ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive.” (490 US, supra, at 450.) *790 (In the instant case, only the conduct alleged to have occurred in Albany County was reduced to criminal judgment. Thus those claims relating solely to conduct alleged tó have occurred outside of Albany County — the bulk of the claims set forth in the complaint — are in no way affected by Halper. This removes from consideration under Halper all causes of action of the complaint other than the second cause of action, which seeks treble damages under Social Services Law § 145-b, for the alleged conduct within Albany County that was the subject of the criminal indictment, and perhaps that portion of the ninth cause of action to the extent it seeks punitive damages for the Albany County conduct.)
The gravamen of this prong of defendants’ motion for summary judgment reduces then to the effect, if any, of Halper (supra) on the treble damage claim under the second cause of action. Respecting that, Halper states: "We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government’s damages and costs may prove to be difficult, if not impossible, to ascertain * * *. Similarly it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed above, the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.” (490 US, supra, at 449J
That the Halper holding was to be confined to its own hard and rare facts, or cases with similar hard and rare facts, is evident from the very next statement in the opinion: "We cast no shadow on these time-honored judgments. What we announce now is a rule for the rare case * * * where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational *791 relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment’ in the plain meaning of the word, then the defendant is entitled to an accounting of the Government’s damages and costs to determine if the penalty sought in fact constitutes a second punishment.” (490 US, supra, at 449-450.)
In Halper (supra) the formula utilized by the False Claims Act produced a penalty of somewhat over 224 times the actual theft.[6] This disturbed the Supreme Court as being grossly inconsistent with a remedial interpretation of the effect of the statute. Indeed, the court took special pains to point out in footnote 9 the fact that under the false claim statute as amended in 1986 the civil penalty against the defendant would have been more than $326,755, almost 560 times the actual theft. (490 US, supra, at 450.)
The Supreme Court in Halper (supra) did not promulgate a new defense of double jeopardy where none existed before; it merely enforced an assertion of the defense in circumstances that clearly cried out for enforcement thereof. The defense of double jeopardy has always been available in a proper fact situation regardless of whether the second penalty imposed was labeled "criminal” or "civil.” The existence of double jeopardy has always been determined by effect rather than by labels.
The very same issue raised by the defendants in the instant case, respecting the very same treble damage statute involved here — Social Services Law § 145-b[7] — was raised and *792 put to rest in Harvey-Cook v Steel (124 AD2d 709 [1986], appeal dismissed 70 NY2d 746).
In Harvey-Cook (supra), the defendant had pleaded guilty to a charge of grand larceny in the third degree, admitting that he received Medicaid funds through the submission of false claims. As part of his sentence he was required to, and did, make restitution.
Subsequently, the plaintiff commenced an action pursuant to Social Services Law § 145-b, to recover three times the amount the defendant fraudulently obtained. The defendant argued that the action should be barred on double jeopardy grounds. The Appellate Division, Second Department, held "the constitutional prohibitions against double jeopardy and double punishment do not prevent the enactment and enforcement of civil as well as criminal sanctions for the same conduct” (Harvey-Cook v Steel, supra, at 709). "The question is whether the sanction imposed is essentially criminal or civil in nature * * * and is one of statutory construction” (supra, at 710; see also, Matter of Barnes v Tofany, 27 NY2d 74, 78; United States ex rel. Marcus v Hess, 317 US 537, 549; Helvering v Mitchell, 303 US 391, 399).
Respecting construction of Social Services Law § 145-b, the court stated: "A reading of Social Services Law § 145-b and its accompanying legislative memorandum (see, Memorandum of State Executive Department, 1975 McKinney’s Session Laws of NY, at 1686-1687), demonstrates that the Legislature intended this provision to be a civil statute imposing civil sanctions. The fact that this section calls for the recovery of an amount greater than the amount of actual damages provides no basis for the invalidation of the provision, which is a remedial sanction enforceable by civil proceedings * * *. Nor is the prescribed measure of recovery so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty (see, One Lot Emerald Cut Stones v United States, 409 US 232, 237). Accordingly, the sanction imposed in the case at bar is remedial in nature, and recovery is not barred by double jeopardy.” (Supra, at 710.)
Harvey-Cook (supra) is authority that Social Services Law § 145-b is per se reasonable and remedial. Nor is the instant case one of those rare cases, as in Halper (supra), where a prolific but small-gauge offender is subjected to a sanction, *793 which, while labeled "civil”, is overwhelmingly disproportionate to the damages he has caused. The evidence in the criminal trial showed the defendants therein to be prolific, but certainly not small-gauge.
The formula utilized in section 145-b of the Social Services Law — treble damages based upon the size of the offense — does not suffer from the same inherent flaw contained in the formula utilized in the Federal False Claims Act — a fixed penalty[8] based solely on the number of offenses, regardless of size — which the Supreme Court in fact approved in the ordinary case, and abhorrent and violative of double jeopardy only in a rare case such as Halper (supra).
There is nothing rare nor extraordinary about the instant case. It does not shock the conscience as did Halper (supra). Indeed, the State contends that the unlawful payments received by defendant Professional Care, Inc. in Albany County amounted to $1,821,693; the fact that said defendant — not facing any incarcerative term — was willing to agree to pay restitution in the sum of $1,000,000, and to agree that such was not in full satisfaction of its civil liability for its Albany County conduct, is strong proof of the reasonableness of the State’s claim for treble damages based on the voluntarily agreed-to restitution figure, under the second cause of action of the complaint. The undersigned presided over the lengthy criminal trial and is familiar with the extensive scope thereof; in no way does the amount of treble damages sought in the second count of the complaint bear no rational relation to the goal of compensating the State for its loss, but is a classic example of such a rational relation.
Finally, the court reaches the issues of the procedural morass that seemingly ties up this case in a Gordian knot. The procedural pathways of this case are as convoluted as the brain of a Goliath.
There is no such problem with respect to defendants’ motions for summary judgment on any of the causes of action other than the second cause of action. With respect to those causes of action, defendants’ reliance upon Schank v Schuchman (supra), and United States v Halper (supra), having been held to be ill-founded, and with respect to those causes of action the court finding issues of fact that must be resolved at *794 trial, the motions for summary judgment proffered by defendants are denied.[9]
The procedural status of the second cause of action is, however, perplexing. At the present moment such cause of action doesn’t exist; it was extinguished by this court on March 6, 1990, by the issuance of an order and judgment granting summary judgment to the State, made pursuant to the direction of the Appellate Division in its decision on February 22, 1990. In this sense the current motion of the defendants for summary judgment on the second cause of action is moot.
However, on January 5, 1990, when the motion was made, the Appellate Division had not yet rendered its decision reversing Justice Doran’s order denying the State’s motion for partial summary judgment on the second cause of action, and the defendants’ motion for summary judgment thereon was then viable. If, at any time between January 5, 1990, and February 22, 1990, the court had decided defendants’ motion for summary judgment, the court’s decision would have had to have been made on the merits. Until January 10, 1990, the double jeopardy argument could have been deemed waived for failure of defendants to plead it as an affirmative defense; but on January 10, 1990, a stipulation was apparently entered between the parties permitting the defendants to amend their answers to assert the affirmative defense of double jeopardy; thus that decisional avenue was foreclosed.
A proper respect for the authority of the Appellate Division would seem to dictate that the defendants’ motion on the second cause of action be denied as moot. Yet a proper respect for chronology and procedural symmetry would seem to dictate that the motion be decided on the merits. In either event the result would be the same.
The court chooses to cut the Gordian knot by adopting both approaches, and accordingly both denies defendants’ motion for summary judgment with respect to the second cause of action of the complaint as moot, and, in the alternative, and for the reasons hereinabove set forth, denies said motion on the merits as well.
*795 With respect to the motion by the defendants for a stay of execution of the order and judgment of this court, dated March 6, 1990, granting summary judgment to the State on the second cause of action, in the amount of $2,000,000, made pursuant to the order and direction of the Appellate Division, not only does there appear no merit to said motion, but the orderly and efficient administration of justice, under the circumstances of this case, dictates that such motion be made and determined in the appellate courts. It would be unseemly and chaotic, under the circumstances of this case, for this court to stay the execution of a judgment directed to be made by an appellate court.
Accordingly, the motion of the defendants to stay the execution of the order and judgment of this court, dated March 6, 1990, granting summary judgment to the State on the second cause of action in the amount of $2,000,000, is denied, and the temporary stay granted by this court on March 14, 1990, is vacated.

. Arline Cohen is now deceased and her executor has been substituted for her as a party defendant.

. Defendant, Martin Weissman, was charged with diverse counts of falsifying business records in the second degree, and a misdemeanor charge of conspiracy in the fifth degree. Defendant Israel Cohen was charged with diverse counts of falsifying business records in the first degree, one count of grand larceny in the second degree, and one misdemeanor count of conspiracy in the fifth degree. Each pleaded guilty to the misdemeanor count of conspiracy in the fifth degree and each was fined $100,000. Each acknowl *785 edged that his plea of guilty and the criminal penalty imposed in no way limited his civil liability. The fines of both individual defendants have been paid.

. Justice Doran was on assignment from the 4th Judicial District and has since returned. His IAS Calendar has been transferred to the undersigned.

. The issue involved in Schank v Schuchman (212 NY 352) really comes down to the question of the applicability of the doctrine of quantum meruit in the instant case. While this question is not really relevant on the motions for summary judgment herein, inasmuch as the court, as above stated, finds that the existence of loss, in whole as alleged, or at least in part, is an issue of fact that must be resolved at trial, the resolution of the question of the applicability of quantum meruit will become important before the final disposition of this case. On the question of whether the "defense” of quantum meruit, in whole or in part, is available to the defendants, the case of S. T. Grand, Inc. v City of New York (32 NY2d 300) is instructive. Even though dealing with an illegal contract, its reasoning may be appropriate to the instant case. Also of importance on the question of the availability to the defendants of quantum meruit — or an offset for the value of services rendered — is the question, under the circumstances of the instant case, and the nature of the services involved, of the ascertainability of the value of such services. In addition there must be considered respecting the damages sustained by plaintiffs, the question of whether the Federal Government, a partner with the State of New York in the Medicaid program, will forego reimbursement to it by New York for the value, if any, of services rendered by the defendants without documented competency as required by Medicaid regulations.

. The Act was subsequently amended by the False Claims Amendments Act of 1986 (Pub L 99-562, 100 Stat 3153) to increase the civil penalty to "not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person”, and "the costs of a civil action brought to recover any such penalty or damages.” (31 USC § 3729 [a].)

. $2,000 multiplied by 65 claims, plus $1,170 (twice $585, the amount of damages sustained by the Government), divided by $585.

. Social Services Law § 145-b recites, in pertinent part, as follows:
"145-b. False statements, actions for treble damages
"1. It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter.
"2. For any violation of subdivision one, the local social services district or the state shall have a right of action to recover civil damages equal to three times the amount by which any figure is falsely overstated. Amounts collected pursuant to a judgment under this section shall be apportioned between the local social services district and the state in accordance with the regulations of the department. The remedy provided by this subdivision shall be in addition to any other remedy provided by law.”

. Plus double-damages.

. The question of punitive damages sought by the State under the ninth cause of action, insofar as claims arising out of conduct in Albany County, if such be the case, are encompassed therein and the effect of United States v Halper (490 US 435) thereon, was not clearly addressed by the parties and is reserved for whatever further motion is deemed appropriate.