*623 OPINION OF THE COURT
Joseph Harris, J.
Petitioner moves for a judgment pursuant to CPLR article 78, annulling a determination made by respondent, dated October 26, 1989, and to award petitioner incidental damages in the amount of $207,354.12.
The determination, made October 26, 1989, was not conveyed to petitioner until November 15, 1989; under the circumstances, due process mandates that the commencement of the four-month Statute of Limitations be deemed November 15, 1989, and accordingly the proceeding is not time barred.
Petitioner, until April 17, 1989 operated as four registered private business schools within the meaning of Education Law § 5002, subject to the jurisdiction of the respondent New York State Education Department. On April 17, 1989, prior to the end of the spring semester, and without notification to the State Education Department, it closed its doors and ceased its operations. No reason — let alone a justifiable one — is set forth in the petition.
Thereafter petitioner applied to the New York State Higher Education Services Corporation (HESC) for payment to it of Tuition Assistance Program (TAP) funds claimed by petitioner to be due it for instructional programs offered to students through April 17, 1989, the date petitioner on its own ceased operations. HESC is a public corporation, duly authorized under the Education Law, to disburse, sunong other funds, TAP funds to registered private business schools for approved instructional programs.
On October 26, 1989, respondent determined that any student attending an educational program in petitioner’s schools at the time of their closure did not receive an "educationally appropriate program”. It is respondent’s position that petitioner had not conducted the programs as they had initially been approved; that each approval of a course or curriculum specified a minimum number of hours as part of the approval, and that these minimum hours of instruction were not met because of the "abrupt and unwarranted” unilateral closure of the programs by petitioner on April 17, 1989. Petitioner contends that a program may not be disapproved except after a hearing conducted pursuant to Education Law § 5003. Respondent’s response is that its determination does not change its initial approval of petitioner’s programs but merely recognizes that the terms of the approval were not met by peti *624 tioner and that petitioner failed to conduct the programs as approved in that it did not deliver to its students the minimum number of hours approved by the Education Department and "guaranteed in the students’ enrollment contracts.” In ultimate effect, respondent contends that by petitioner’s unilateral action, without prior consultation with the State Education Department, petitioner "locked out” its students, prevented them from completing their instructional programs, and left them completely abandoned; that as a result of this— by materially breaching its contract — petitioner had not in fact provided an approved program for TAP award eligibility; that if these facts had been known at the time of the initial approval, said approval would not have been given.
Upon this determination by respondent, HESC proceeded to decertify petitioner’s former students, denied the payment to petitioner of $207,354.12 (the amount agreed that petitioner would have been entitled to for the spring 1988-1989 term, prorated to Apr. 17, 1989, if it met TAP eligibility), and further demanded a refund from petitioner of $100,745.85 previously paid for the 1988-1989 spring term.
The authority of the Commissioner of Education to approve courses and curricula for TAP eligibility is set forth in Education Law § 5003. The requirements for curriculum approval are set forth in 8 NYCRR 126.4 and include, in subdivision (c) (3) "the minimum and/or maximum instructional hours and the allocation of time to each portion of the curriculum or course”. Under 8 NYCRR 126.7 (b) (3), a school’s enrollment agreement must contain "the length of the curriculum, course or courses in instructional hours”. Under 8 NYCRR 145-2.3 (b) (2) (iii), to be eligible for the Tuition Assistance Program, a nondegree private business school program must be "of at least 1440 instructional hours’ duration” and registered by the Department of Education (Education Law § 601 [4] [3]).
For these reasons, the courses and curricula approved for petitioner were approved for specific numbers of instructional hours, as was the uniform practice with all registered private business schools. This was both a legally indispensable requirement and a practical necessary one. But by its unilateral closing of its schools, petitioner breached this requirement and failed to provide the complete educational service called for. The incomplete educational service it provided prior to April 17, 1989, is unmeasurable; the students stranded by the petitioner’s unexcused action were left with not even partial academic credits that could be applied else *625 where at some other school. (See, Kuriansky v Professional Care, 147 Misc 2d 782, 788, n 4 [Sup Ct, Albany County, Harris, J.]; see also, S. T. Grand, Inc. v City of New York, 32 NY2d 300.)
Upon the state of the pleadings the court cannot say that the determination by respondent is arbitrary and capricious— that is, without rational basis. (Matter of Pell v Board of Educ., 34 NY2d 222.) Accordingly, the petition is dismissed!
Although it is not necessary by reason of the above decision to address subsidiary issues raised, with respect to the prayer for incidental damages, the court points out that the Higher Education Services Corporation is a separate legal entity from the respondent State Education Department, not under the direction and control thereof, and is the agency that would be liable for damages if damages were owing to petitioner, but was not included by the petitioner in this proceeding as a party respondent. (See, CPLR 7806; see also, Matter of Dubner v Ambach, 74 AD2d 949.)