STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Plaintiff,

v.

Robert MALLELA et alia, Defendants.

No. CV–00–4923 (CPS).

United States District Court,
E.D. New York.

Sept. 20, 2001.

Evan H. Krinick, Rivkin, Radler & Kremer, Uniondale, NY, Craig J. Bruno, Bruno, Gerbino & Macchia, LLP, Melville, NY, Steven D. Brower, Bruno, Gerbino & Macchia, LLP, Melville, NY, Timothy Kollar, Katten Muchin Zavis, LLP, Chicago, IL, Ross O. Silverman, Jenny Louise Johnson, Gil M. Soffer, Katten Muchin Zavis, Chicago, IL, for plaintiff.

Barry M. Fallick, Rochman Platzer Fallick & Sternheim, LLP, New York City, John Mark Lane, Shapiro & Lane, Mamoroneck, NY, Jason M. Ewasko, Martin P. Russo, MPR Law Practice, P.C., Peekskill, NY, Joseph J. LaBarbera, LaBarbera & Lambert, P.C., New York City, David J. Sobel, Sobel & Seidell, LLP, Smithtown, NY, Evan S. Schwartz, Quadrino & Schwartz, P.C., Garden City, NY, Roy W. Breitenbach, Garfunkel, Wild, & Travis, P.C., Great Neck, NY, Lloyd Andrew Gura, Mound, Cotton & Wollan, New York City, Marina Tylo, Brooklyn, NY, Mark L. Furman, Lifshutz, Polland & Associates P.C., New York City, Charles G. Eichinger, Islandia, NY, Craig J. Bruno, Bruno, Gerbino & Macchia, LLP, Melville, NY, Steven Jay Harfenist, Friedman & Harfenist, Lake Sucess, NY, Evan H. Krinick, Rivkin, Radler & Kremer, Uniondale, NY, for defendants.

## MEMORANDUM AND ORDER

SIFTON, Senior District Judge.

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm")

brings this diversity action against defendants Robert Mallela and Swapnadip Lahiri (collectively, the "Licensed Defendants"), Tatiana Rybuk and Paul Schneider (collectively, the "Unlicensed Defendants"), Advanced Physical Medicine and Rehabilitation d/b/a Mill Basin Physical Medicine ("Advanced"), Ridgewood Medical Specialists and Hempstead Village Medical ("Ridgewood"), Allied Medical Healthcare, P.C. ("Allied"), Astoria Physical Medicine and Rehabilitation, P.C. ("Astoria"), Atlantic Medical Practice, P.C. ("Atlantic"), Avenue U Medical Services, P.C. ("Avenue U"), Bay Medical Health Care & Diagnostic, P.C. ("Bay Medical"), Bettercare Health Care Pain Management and Rehab, P.C., sued herein as Bettercare Healthcare Pain and Management, P.C. d/b/a Firstcare of Bettercare Healthcare ("Bettercare"), Canarsie Medical Services, P.C. ("Canarsie"), Central Medical Rehabilitation, P.C. ("Central Medical"), Central Suffolk Medical Services, P.C. ("Central Suffolk"), Citywide Medical Practice, P.C. ("Citywide"), DAKA Medical, P.C. d/b/a Island Health Professionals ("DAKA"), Farragut Medical Care, P.C. ("Farragut"), First Queens Physical Medical and Rehabilitation, P.C. ("First Queens"), Flatbush Medical Services, P.C. ("Flatbush"), Fordham Medical Pain and Treatment, P.C. ("Fordham"), Franklin Medical Rehabilitation, P.C. ("Franklin"), Grand Central Healthcare and Physical Medicine, P.C. ("Grand Central"), Health First Medical Practice, P.C. ("Health First"), Mallela Medical Services, P.C. ("Mallela Medical"), Medical Services of Bayside, P.C ("Bayside"), Mid–Island Medical Healthcare, P.C. ("Mid–Island"), Mid–Queens Medical Services, P.C. ("Mid–Queens"), Millennium Medical Diagnos-

tics, P.C. ("Millennium"), N.Y. Alea Medical, P.C. ("Alea"), N.Y. Pro Care Medical & Rehabilitation, P.C. ("Pro Care"), Oceanview Medical Care, P.C. ("Oceanview"), Patient's Choice Medical Services, P.C. ("Patient's Choice"), Pelham Physical Medicine and Rehabilitation, P.C. ("Pelham"), Sterling Medical Diagnostic, P.C. ("Sterling"), Triborough Medical Diagnostic, P.C. ("Triborough"), Urban Medical Diagnostics, P.C. ("Urban"), Valley Physical Medicine & Rehabilitation, P.C. ("Valley Physical"), Valley Rehabilitation and Medical Offices, P.C. ("Valley Rehabilitation"), Victory Medical, P.C. ("Victory"), and Yonkers Medical Services, P.C. d/b/a Injury Relief Medical Care ("Yonkers") (collectively, the "PC Defendants"), stating claims of fraud, unfair trade practices, and unjust enrichment. The gravamen of plaintiff's complaint is that the defendants engaged in a fraudulent scheme pursuant to which the PC Defendants and the Unlicensed Defendants falsely used the names of the Licensed Defendants on certificates of incorporation filed with New York State to obtain certificates of authority to practice medicine. Plaintiff, which issues automobile insurance policies and has compensated the PC Defendants for services rendered to plaintiff's policyholders, seeks monetary, declaratory, and injunctive relief.

Defendants Fordham, Sterling, Millennium, Triborough, Central Medical, and Urban (the "Counterclaimants") counterclaim for breach of contract, unjust enrichment, and deceptive practices in violation of N.Y. General Business Law § 349. Counterclaimants also seek attorney's fees, costs, and interest, relying in part on § 349.[1]

Defendants Mallela Medical, Mid–Queens, Bettercare, Alea, Yonkers, and

---

**1.** Defendants Franklin, Bayside, Astoria, and Valley Rehabilitation also assert counter-

claims that are not relevant to the motions at bar.

Valley Physical (the "Moving Defendants") now move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Plaintiff cross-moves to dismiss those of the Counter-claimants' claims that are based on General Business Law § 349. For the reasons set forth below, the Moving Defendants' motions to dismiss are granted, as is plaintiff's motion to dismiss.

## BACKGROUND

Unless otherwise noted, the following facts are drawn from plaintiff's complaint and are assumed to be true for the purposes of these motions.

Plaintiff State Farm is an Illinois corporation with its principal place of business in Illinois. State Farm engages in the business of selling automobile insurance in New York.

Defendant Robert Mallela, M.D. is a New Jersey resident who has been licensed to practice medicine and has engaged in the practice of medicine in New York since 1994. Defendant Swapnadip Lahiri is a New Jersey resident who is also licensed to practice medicine in New York and has engaged in the practice of medicine in New York since 1993. Defendant Tatiana Rybuk is a New York resident who has never been licensed to practice medicine in New York. On October 27, 1999, Rybuk pled guilty in New York State court to the felonies of attempted enterprise corruption, a scheme to defraud, and twelve counts of insurance fraud and admitted that she owned and controlled several unlawfully licensed professional service corporations, including defendants Avenue U, Canarsie, and Flatbush. Defendant Paul Schneider is a New York res-

ident who has never been licensed to practice medicine in New York. On October 27, 1999, Schneider pled guilty in New York State court to the felonies of attempted enterprise corruption, a scheme to defraud, and twelve counts of insurance fraud and admitted that he owned and controlled several unlawfully licensed professional service corporations, including defendants Avenue U, Canarsie, and Flatbush.

The PC Defendants are all New York professional service corporations with principal places of business in New York. Each certificate of incorporation of the PC Defendants falsely states that one or both of the Licensed Defendants has been, at varying points in time, the PC Defendants' sole shareholder(s), director(s), and officer(s). According to the complaint, the Licensed Defendants were in fact sham shareholders, directors, and officers, who were paid a fee to allow the true owner or owners of each PC Defendant to obtain unlawfully a certificate of authority for the PC Defendant to practice medicine.

### The Statutory Scheme

Under New York's Comprehensive Motor Vehicle Insurance Reparation Act (the "No-fault Law"), New York Insurance Law §§ 5101 et seq., State Farm, as an automobile insurer, is obligated to indemnify its insureds for, *inter alia*, reasonable and necessary medical services for injuries sustained by occupants of its insureds' covered motor vehicles that arise from the use or operation of those vehicles. Specifically, plaintiff is required "to reimburse a [covered] person for basic economic loss on account of personal injury arising out of the use or operation of a [covered] motor

---

2. Valley Physical moves pursuant to Rule 12(c). Because its motion is in substance a motion to dismiss inasmuch as it assumes the truth of the factual averments in plaintiff's complaint, I treat its motion like the others filed by defendants in this case, as a Rule 12(b)(6) motion.

vehicle," § 5102(b), where "basic economic loss" is defined to include:

> [a]ll necessary expenses incurred for: (i) medical, hospital (including services rendered in compliance with article forty-one of the public health law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and (iv) any other professional health services.

N.Y.Ins.Law § 5102(a)(1). Under 11 N.Y.C.R.R. § 65.15(o)(1)(vi), one of the regulations implementing the No-fault Law, "[t]he term any other professional health services, as used in section 5102(a)(1)(iv) . . ., shall be limited to those services that are required or would be required to be licensed by the State of New York if performed within the State of New York. Such professional health services should be necessary for the treatment of the injuries sustained and within the lawful scope of the licensee's practice." A health care provider may receive an assignment of benefits from a covered person who is treated by that provider. If a provider receives such an assignment, the covered person's insurer "shall pay the provider[ ] of services . . . directly." 11 N.Y.C.R.R. § 65.15(j)(1).

Section 5106 of the No-fault law and the regulations pursuant thereto provide thirty days within which an insurer must either pay or deny a claim for benefits. *See* N.Y.Ins.Law § 5106; 11 N.Y.C.R.R. § 65.15(g)(3). No-fault benefits are deemed "overdue" if not paid within that period, and overdue payments bear interest at a rate of 2% per month. § 5106; 11

N.Y.C.R.R. § 65.15(h). In the alternative, an insurer may, within ten days of receiving a claim, request "verification" of the claim by "forward[ing] . . . those prescribed verification forms it will require prior to payment of the initial claim." § 65.15(d)(1).

New York's Business Corporation Law regulates the incorporation of entities under New York law. Under § 1508, "[n]o individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession which such corporation is authorized to practice and is either a shareholder of such corporation or engaged in the practice of his profession in such corporation." N.Y.Bus.Corp.Law § 1508. Section 1507 states that "[a] professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice" and prohibits shareholders of professional service corporations from transferring the voting power of their shares to any person who is not authorized by law to practice the profession that the professional service corporation is authorized to practice. N.Y.Bus.Corp.Law § 1507.

New York Education Law § 6507(4)(c) directs the New York State Department of Education to issue a certificate of authority to practice medicine to any qualified professional service corporation. In order to obtain such a certificate, a professional service corporation must file with the Department of Education a copy of its certificate of incorporation. Section 1503 of the Business Corporation Law requires the certificate of incorporation for any professional service corporation to

> (i) . . . state the profession or professions to be practiced by such corporation and the names and residence addresses

of all individuals who are to be the original shareholders, directors and officers of such corporation, and (ii) ... have attached thereto a certificate or certificates issued by the licensing authority certifying that each of the proposed shareholders, directors and officers is authorized by law to practice a profession which the corporation is being organized to practice.

N.Y.Bus.Corp.Law § 1503(b). Under § 1503(d),

[a] professional service corporation, ... shall be under the supervision of the regents of the university of the state of New York and be subject to disciplinary proceedings and penalties, and its certificate of incorporation shall be subject to suspension, revocation or annulment for cause, in the same manner and to the same extent as is provided with respect to individuals and their licenses, certificates, and registrations in title eight of the education law.

N.Y.Bus.Corp.Law § 1503(d). In addition, Section 1101 grants the attorney general the authority to bring a judicial action "for the dissolution of a corporation upon one or more of the following grounds: (1) That the corporation procured its formation through fraudulent misrepresentation or concealment of a material fact." N.Y.Bus. Corp.Law § 1503(d). The No-fault Law requires "[e]very insurer [to] report to the commissioner of health any patterns of overcharging, excessive treatment or other improper actions by a health provider within thirty days after such insurer has knowledge of such pattern." N.Y.Ins.Law. § 5108(c).

### The Claims

According to plaintiff's complaint, the certificate of incorporation of each of the PC Defendants that was filed with the Department of Education indicates that the profession to be practiced by the corporation is medicine and falsely states that the corporation's shareholder, director, and officer is one or both of the Licensed Defendants. In fact, defendants Mallela and Lahiri, the Licensed Defendants, were "sham" shareholders, directors, and officers of the PC Defendants who, when the certificates of incorporation were filed, had no real ownership or control over the PC Defendants, did not invest any money, make any capital contributions, pay consideration for any shares, or have any authority for any bank account of any of the PC Defendants. The Licensed Defendants were paid a fee to allow their names to be used on the PC Defendants' certificates of incorporation. The Unlicensed Defendants "and other individuals whose identities have been concealed from the State of New York, State Farm and the public" were the "true" shareholders, directors, and officers of the PC Defendants. (Compl.¶ 56.) Relying on Business Corporation Law §§ 1507 and 1508, plaintiff contends that the Unlicensed Defendants, as well as "any other individual[s] who w[ere] not licensed to practice medicine," could not lawfully serve as directors or officers of any of the PC Defendants and that it was unlawful for the Licensed Defendants to transfer control of the PC Defendants to the Unlicensed Defendants and other individuals who are not licensed to practice medicine. (Compl.¶ 50.)

State Farm seeks declaratory and injunctive relief, as well as compensatory damages.[3] In claim one, State Farm seeks judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring

---

**3.** According to the complaint, State Farm has paid more than $6,000,000 to the PC Defendants as compensation for services the PC Defendants provided to State Farm's insureds.

that: (1) the Licensed Defendants were sham shareholders, directors, and officers of the PC Defendants, (2) the certificates of incorporation filed by the PC Defendants with the Department of Education were false, (3) the certificates of authority obtained by the PC Defendants were fraudulently and unlawfully obtained, (4) neither State Farm "nor any other person is or ever has been responsible to pay for services purportedly provided by" the PC Defendants, and (5) the PC Defendants are permanently enjoined from rendering any further services, submitting to State Farm any request for payment for any service purportedly rendered in the past, or initiating or prosecuting against State Farm any legal proceeding seeking payment for services.

In claim two, plaintiff alleges that "defendants intentionally and knowingly made false and fraudulent statements of material facts to State Farm, namely that defendants Mallela and Lahiri were the shareholders, directors and officers of the [PC Defendants], that the certificates of authority to practice medicine were lawfully obtained and that the services purportedly provided and billed by the [PC Defendants] were lawfully rendered and compensable under the No-fault Law." (Compl. ¶ 67.) Plaintiff states that "defendants intentionally and knowingly concealed material facts from State Farm, namely that defendants Rybuk and Schneider and other individuals whose identities have been concealed and who in most, if not all, instances are chiropractors or unlicensed, actually owned and controlled the [PC Defendants]." (Compl. ¶ 68.) The defendants' material false statements and concealed facts allegedly were made and concealed in order to induce State Farm to pay for services purportedly provided by the PC Defendants, and State Farm justifiably relied on the defendants' false and fraudulent representations by paying more than $6 million to the PC Defendants. Plaintiff seeks compensatory and punitive damages in claim two.

In claim three, plaintiff asserts that defendants' actions constitute unfair and deceptive acts and practices that have harmed the public and State Farm, in violation of New York General Business Law § 349.[4] In claim four, plaintiff states a claim for unjust enrichment, asserting that the PC Defendants' retention of the monies State Farm paid them "violates fundamental principles of justice, equity, and good conscience." (Compl. ¶ 83.)

Nowhere in its complaint does plaintiff allege that the services provided by the PC Defendants to plaintiff's insureds were provided by unlicensed professionals. Rather, plaintiff contends only that the PC Defendants, by whom the servicing professionals were employed, fraudulently obtained certificates of authority to practice medicine. Nor does plaintiff claim that it was billed for services that were not actually rendered. Plaintiff admits in its complaint that, in the "light of the differences between the parties, there is uncertainty as to whether the defendants have violated the laws, regulations and public policies of the State of New York." (Compl. ¶ 64.)

In their answers, the Counterclaimants state common law claims for breach of contract and unjust enrichment and, in addition, claim that State Farm has engaged in deceptive practices in violation of General Business Law § 349. According to the Counterclaimants, the Counterclaimants provided medical services to

---

4. Section 349 provides in part that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y.Gen.Bus.Law § 349(a).

plaintiff's insureds who, in consideration thereof, assigned to the Counterclaimants their rights to receive payment from plaintiff. The services performed by the Counterclaimants were medically necessary and were performed by duly licensed physicians, and the Counterclaimants submitted timely invoices for payment to plaintiff in connection with these services. Starting sometime in 1999, plaintiff refused to make payment on invoices the Counterclaimants submitted.[5] According to the Counterclaimants, "by representing to the public that its medical claims will be reimbursed while knowing that it will subsequently intentionally erect improper barriers to repayment," plaintiff breached § 349. (Sterling Answer ¶ 45.) Counterclaimants state that plaintiff's actions "have a broader impact on consumers at large" because they "frustrate[ ] the objective of New York's no fault insurance scheme to institute an inexpensive, efficient method of compensating accident victims and thereby harm[ ] the public at large." (*Id.* ¶ 47–48.)

The Moving Defendants move to dismiss plaintiff's complaint, essentially raising eight arguments: (1) This Court lacks subject matter jurisdiction and, in the alternative, should abstain from adjudicating this matter, (2) plaintiff fails to state a claim for declaratory relief, (3) plaintiff has not pleaded fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b), (4) as a matter of law, the manner in which the Moving Defendants are structured does not relieve plaintiff of its ongoing obligation to pay for reasonable and necessary medical treatments provided by licensed professionals, (5) no private right of action exists to enforce

New York's pertinent corporate form requirements, (6) plaintiff's claims for damages are time-barred and waived, (7) plaintiff fails to state a claim for unjust enrichment because equity requires that the Moving Defendants be allowed to keep those payments they have received for services rendered, and (8) plaintiff lacks standing to sue under General Business Law § 349.[6]

Plaintiff moves to dismiss the Counterclaimants' claims based on General Business Law § 349, arguing that the Counterclaimants have not alleged acts or practices that have a broad impact on consumers at large, as required under § 349.

### DISCUSSION

Faced with a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), a court must "tak[e] as true all allegations in the complaint, and draw[ ] all reasonable inferences therefrom in the [plaintiff's] favor." *Koppel v. 4987 Corp.,* 167 F.3d 125, 130 (2d Cir.1999) (quotations omitted). A court must not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted)).

*Moving Defendants' Motions*

▮ I first address the Moving Defendants' jurisdictional arguments. The

---

**5.** While the Counterclaimants' answers do not specify a time frame, plaintiff's complaint indicates that plaintiff stopped paying claims submitted by the PC Defendants at some point in 1999.

**6.** Not all of the Moving Defendants raise all of these arguments. Nonetheless, because the reasoning underlying each of these arguments applies equally to all PC Defendants, I construe each motion to dismiss as raising all of these arguments.

Moving Defendants argue that the Court lacks subject matter jurisdiction over this diversity action because the amount of damages plaintiff seeks from every defendant does not exceed $75,000, thereby falling shy of the applicable amount in controversy requirement. *See* 28 U.S.C. § 1332. Whether § 1332's amount in controversy requirement is satisfied is determined as of the time a complaint is filed. *See Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co.,* 93 F.3d 1064, 1070 (2d Cir.1996). The party asserting jurisdiction "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount," but the amount claimed by the plaintiff governs unless it appears to a legal certainty that the claim is for some lesser amount. *Id.* In an action for declaratory or injunctive relief, the amount in controversy is determined by valuing the object of the litigation. *See Beacon Constr. Co. Inc. v. Matco Elec. Co. Inc.,* 521 F.2d 392, 399 (2d Cir.1975). Because "the diversity statute confers jurisdiction over 'civil actions' rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims [against a single defendant] in order to satisfy the amount in controversy requirement." *Wolde–Meskel v. Vocational Instruction Project Community Services, Inc.,* 166 F.3d 59, 62 (2d Cir.1999).

The declaration sought by State Farm would declare, *inter alia,* that the services performed by the PC Defendants need not be compensated by State Farm and would enjoin each of the PC Defendants from submitting any claims to State Farm in the future and, indeed, from rendering any further medical services whatsoever. The value of this declaration likely exceeds $75,000 for each defendant, especially if the value of the litigation is aggregated with the damages plaintiff seeks from each defendant. The Court therefore has original subject matter jurisdiction over this action.[7]

■ The Moving Defendants also argue, citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), that the Court should abstain from deciding this matter. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236 (internal quotation omitted). Because abstention is the exception, not the rule, a party seeking abstention carries a "heavy burden, and district courts should abstain from hearing cases only in exceptional circumstances." *Local 621, S.E.I.U., AFL—CIO v. New York,* 2000 WL 1459844, at *4 (S.D.N.Y.2000).

■ Under *Burford* and its progeny, a federal court should abstain from deciding a case "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Service, Inc. v. Council of New*

---

**7.** Even if the amount in controversy for some defendant were less than $75,000, plaintiff's claims against each defendant involve the same alleged course of conduct, and this Court would, accordingly, possess supplemental jurisdiction over each such claim under 28 U.S.C. § 1367.

*Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotation omitted). *"Burford* is concerned with protecting complex state administrative processes from undue federal interference." *Id.* Nonetheless, *Burford* "does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *Id.* Rather, a federal court should abstain only when adjudication of a case would "interfer[e] with specialized, ongoing state regulatory schemes." *Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 599 (2d Cir.1988).

The Moving Defendants argue that *Burford* abstention is appropriate in order to avoid interference with New York's "extensive statutory [no-fault insurance] scheme." (Alea & Yonkers Mem.Supp., at 10.) The mere fact that this action involves questions of state law insurance coverage does not, however, imply that abstention is appropriate. In *Alliance of American Insurers,* an insurance industry cooperative group brought an action challenging the constitutionality of a provision of the New York Medical and Dental Malpractice and Professional Conduct Act that imposed a moratorium on medical malpractice insolvencies. The defendants moved to dismiss, arguing that "the insurance industry is subject to . . . a specialized, comprehensive state regulatory system under the New York Insurance Law." *Alliance of American Insurers,* 854 F.2d at 600. The district court granted the motion, ruling in favor of abstention, but the Court of Appeals reversed, holding that because plaintiffs did not "challenge . . . a state administrative or judicial order made pursuant to state law, [and because the] case does not involve the federal courts in disrupting any ongoing state judicial or administrative proceedings," abstention was inappropriate. *Id.*

In the case at bar, plaintiff alleges fraud on the part of several private health care providers. Adjudication of plaintiff's claims will not unduly disrupt New York's regulatory scheme. If plaintiff succeeds, the PC Defendants will not be able to provide medical services and bill plaintiff for those services; if plaintiff fails, the PC Defendants will likely obtain compensation for services already rendered to plaintiff's insureds. As in *Alliance of American Insurers,* "[t]he considerations warranting invocation of *Burford* abstention are absent in the case now before the Court," because "[t]his case [will] not involve federal courts in supervising, interrupting, or meddling in state policies by interfering in state regulatory matters." *Id.*

■ Under *Colorado River,* a federal court may, based on "considerations of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation," abstain from exercising jurisdiction over an action where a concurrent state proceeding is pending. 424 U.S. at 817, 96 S.Ct. 1236 (internal quotation omitted). The Moving Defendants contend that an action pending in New York State Supreme Court, New York County, entitled *Progressive Northeastern Ins. Co. v. Advanced Diagnostics, P.C.,* Index No. 601112/00, in which substantially similar issues of state law are before the court, requires that the Court abstain. The determination whether to abstain "requires examination of six factors: (1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *Federal Deposit Insurance Corp. v. Four Star Holding Co.,* 178 F.3d 97, 101 (2d Cir. 1999). "The test does not rest on a me-

chanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.*

■ Before examining these factors, a court must determine as an initial matter whether there exists a "concurrent" state court proceeding. *See Alliance of American Insurers*, 854 F.2d at 603. "Proceedings are concurrent only when the federal and state actions involve the same parties and issues." *Shchegol v. Rabinovich*, 1999 WL 398025, at *5 (S.D.N.Y. June 9, 1999); *see also Alliance of American Insurers*, 854 F.2d at 603 ("[S]imilarity of parties is not the same as identity of parties."). State Farm is not a party to the *Progressive Northeastern* state court proceeding, and the proceedings are, therefore, not concurrent. Because the two proceedings are not concurrent, *Colorado River* abstention would be inappropriate, and I address plaintiff's claims on the merits. In claim one, plaintiff seeks prospective relief in the form of a declaratory judgment. In claims two, three, and four, plaintiff seeks retrospective relief in the form of damages.

### Claim One

■ In claim one, plaintiff asks the Court to declare, *inter alia*, that neither State Farm "nor any other person is or ever has been responsible to pay for services purportedly provided by" the PC Defendants and to enjoin the PC Defendants from rendering any further services, submitting to State Farm any request for payment for any service purportedly rendered in the past, or initiating or prosecuting against State Farm any legal proceed-

ing seeking payment for services. The Moving Defendants argue, first, that plaintiff fails to allege an actual controversy sufficient to vest jurisdiction to adjudicate plaintiff's first cause of action under the Declaratory Judgment Act, 28 U.S.C. § 2201.

Before a court can declare a party's rights and obligations under § 2201, it must find that there exists "a case of actual controversy within its jurisdiction." § 2201. This requirement is identical to the "case and controversy" requirement set forth in Article III of the Constitution. *See Public Service Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 242, 73 S.Ct. 236, 97 L.Ed. 291 (1952). Relying on tentative assertions in the complaint, the Moving Defendants assert that plaintiff's complaint does not present the Court with a case or controversy sufficient to vest jurisdiction, but rather asks the Court to render an advisory opinion.[8] "A mere abstract question or hypothetical threat is not a sufficient basis for a declaratory judgment under the Act." *Long Island Lighting Co. v. Suffolk*, 604 F.Supp. 759, 762 (S.D.N.Y. 1985). Here, however, the PC Defendants continue to submit claims for payment to State Farm, and State Farm consistently denies those claims. The dispute between the parties is, accordingly, neither abstract nor hypothetical, and plaintiff's complaint describes an "actual controversy" sufficient to permit the Court to enter a declaratory judgment.

■ Nonetheless, the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wycoff*, 344 U.S. at 241, 73 S.Ct. 236. In

---

8. The complaint alleges, among else, that "State Farm believes that the defendants have fraudulently obtained from the New York State Department of Education certificates of authority" and that "[i]n light of the differ-

ences between the parties, there is uncertainty as to whether the defendants have violated the laws, regulations and public policies of the State of New York." (Compl.¶¶ 63, 64.)

determining in what manner to exercise that discretion, "two principal criteria guid[e] the policy in favor of rendering declaratory judgments: ... (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969). If either of these objectives may be met, a court should entertain the action. *See id.*

The declaratory judgment plaintiff seeks effectively would preclude the PC Defendants from rendering any further medical services or seeking compensation therefor from plaintiff. This judgment, if granted, would finally settle the legal relations between the parties and would terminate the ongoing controversy. Therefore, it is appropriate to entertain this action.

The Moving Defendants next argue that the manner in which they are structured does not relieve plaintiff of its obligation to pay for reasonable and necessary medical treatments provided by licensed professionals and that no private right of action exists to enforce New York's corporate form requirements or to dissolve a corporation. According to this argument, an insurer may not inquire into the claimant's corporate structure nor deny a claim on the basis of that structure. Rather, if an insurer becomes aware of an issue with respect to a provider's corporate structure, it must, under § 5108 of the No-fault Law, report that issue to the commissioner of health. Under § 1503 of the Business Corporation Law, the regents of the University of the State of New York may institute a disciplinary proceeding, and, under § 1101, the attorney general may file a civil action to dissolve the corporation, but, the argument goes, State Farm may not deny a claim on the basis of the claimant's corporate structure.

The No–Fault Law, first enacted in 1973, replaced the common law system of contested lawsuits sounding in tort with a comprehensive, regulated system designed to "compensate victims of automobile accidents without regard to fault," *Montgomery v. Daniels*, 38 N.Y.2d 41, 45, 378 N.Y.S.2d 1, 340 N.E.2d 444 (1975), and to ensure the payment of "prompt uncontested, first-party insurance benefits." *Presbyterian Hospital v. Maryland Casualty Co.*, 90 N.Y.2d 274, 285, 660 N.Y.S.2d 536, 683 N.E.2d 1 (1997) (precluding insurer from denying liability on any ground other than lack of coverage in suit for unpaid claim where insurer failed to timely deny claim pursuant to statutory and regulatory scheme). The No-fault Law is "a creature of legislative fiat," *id.* at 287, 660 N.Y.S.2d 536, 683 N.E.2d 1 (dissenting opinion), unanimously described by the Court of Appeals as a "Rube–Goldberg–like maze." *Id.* at 286, 660 N.Y.S.2d 536, 683 N.E.2d 1; *id.* at 287, 660 N.Y.S.2d 536, 683 N.E.2d 1 (dissenting opinion). The law "does not codify common-law principles; it creates new and independent statutory rights and obligations." *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 175, 501 N.Y.S.2d 313, 492 N.E.2d 386 (1986).

Distinct from the No-fault Law is New York's Business Corporations Law, which in 1970 was modified to permit professionals to utilize the corporate form. The stated purpose of this modification was "to make available to professionals tax benefits which were not available to them when practicing as individuals or in partnerships." *We're Associates Co. v. Cohen, Stracher & Bloom, P.C.*, 103 A.D.2d 130, 132, 478 N.Y.S.2d 670 (N.Y.App.Div. 1984). While permitting professionals to utilize the corporate form, the legislature established special requirements for pro-

fessional health corporations in order to avoid perceived dangers inherent in the "corporate practice of medicine." Thus, the legislature requires professional health service corporations to be owned and controlled only by those who are licensed to practice medicine, and, in order to obtain the requisite certificate of authority to practice medicine, a professional service corporation must certify that each of its directors, officers, and shareholders is licensed to practice medicine. *See* N.Y.Bus.Corp.Law §§ 1503, 1507, 1508; Educ.Law § 6507(4)(c). The rationale behind the prohibition of the corporate practice of medicine is that, when a professional health services corporation is owned by an unlicensed individual, "there is a danger that a doctor, knowing that he had to split his fees with one who did not render medical services, might be hesitant to provide proper services to a patient. Conversely, unneeded treatment might be rendered." *E & B Mktg. Enter. Inc. v. Ryan,* 209 Ill.App.3d 626, 154 Ill.Dec. 339, 568 N.E.2d 339, 342 (1991). According to the allegations contained in plaintiff's complaint, which I assume to be true, each of the PC Defendants represented to the State of New York in its certificate of incorporation that it was owned and controlled only by individuals licensed to practice medicine when in fact it was owned and controlled by unlicensed individuals.

State Farm argues that a professional corporation that is unlawfully licensed has no standing to bring a claim for benefits under the No-fault Law. This argument lacks a basis in either the No-fault Law or in the regulations promulgated pursuant thereto. Where a covered person incurs basic economic loss arising out of a covered accident, he may assign his right to benefits. "[U]pon assignment by the applicant ..., [an insurer] shall pay the providers of services ... directly." 11 N.Y.C.R.R. § 65.15(j)(1). Nowhere does the No-fault Law or regulations indicate that an insurer only need pay an assignee provider of services if that provider is lawfully licensed pursuant to New York law.

The No-fault regulations were substantially revised effective February 1, 2000. The revised regulations, not heretofore referenced in this opinion, provide, instead of the above, that insurance companies shall "pay the *state licensed* providers of health services ... directly." 11 N.Y.C.R.R. § 65–3.11 (emphasis supplied). These revised regulations have, however, been found to be unconstitutional under the New York State Constitution. *See Matter of the Med. Soc'y of the State of New York, Inc. v. Levin,* 185 Misc.2d 536, 539, 712 N.Y.S.2d 745 (N.Y.Sup.Ct.2000) (holding promulgation of revised regulations to be arbitrary and capricious and an abuse of discretion in violation of state Administrative Procedure Act because, *inter alia,* "the impacts of the proposed changes on small businesses and other members of the public were not properly or adequately identified"), *aff'd,* 280 A.D.2d 309, 723 N.Y.S.2d 133 (N.Y.App. Div.2001). Thus, while the revised regulations purport to eliminate "the ability of non-licensed providers of medical equipment [or services] to become assignees of covered persons/applicants," that elimination is not effective. *Id.* at 539, 712 N.Y.S.2d 745.

Moreover, the alleged fraudulent ownership of the PC Defendants does not affect the question whether plaintiff's insureds incurred and incur basic economic loss that plaintiff is required to compensate. Basic economic loss is defined as, *inter alia,* "all necessary expenses incurred for ... any other professional health services." N.Y.Ins.Law. § 5102(a). The In-

surance Department's regulations state that the term " 'any other professional health services' ... shall be limited to those services that are required or would be required to be licensed by the State of New York if performed within the State of New York. Such professional health services should be necessary for the treatment of the injuries sustained and within the lawful scope of the licensee's practice." 11 N.Y.C.R.R. § 65.15(o)(1)(vi). Thus, under this regulation, a covered person receives professional health services that must be compensated by an insurer if the services are medically necessary, the service provider has a license to provide the services, and the services provided are within the lawful scope of the licensee's practice. Assuming the truth of plaintiff's allegations, these conditions are met: There are no allegations that services were or are provided to non-covered persons or arose or arise out of non-covered accidents, that they were or are not medically necessary, or that the providers of the services did or do not have lawfully obtained licenses to provide the services. The only allegation is that the PC Defendants' licensed providers of services were and are employed by corporations that have unlawfully obtained "certificates of authority," not licenses.[9]

If an insured receives reasonable and necessary medical services from a licensed practitioner who demands that the insured pay her directly rather than assign his right to benefits, the insured's right to payment from his insurer does not depend on whether his practitioner is employed by an entity that has fraudulently obtained a certificate of authority to practice medicine.[10] Because an insured may, under current law, effectively assign his right to benefits to any "provider[ ] of services," without any requirement that the provider have a certificate of authority or a validly obtained certificate of authority, the fact that the claims at issue here were and are submitted by the PC Defendants rather than the insureds themselves does not relieve plaintiff of its statutory obligation to pay those claims. The remedy for the PC Defendant's alleged submission of fraudulent certificates of incorporation—in violation of the Business Corporations Law, not the No–Fault Law—is not to provide a windfall to insurers but to have one of the disciplinary actions authorized by law brought against the PC Defendants. See Presbyterian Hosp., 90 N.Y.2d at 284, 660 N.Y.S.2d 536, 683 N.E.2d 1 (applying *inclusio unius, exclusio alterius* maxim to interpret No–Fault Law provisions); Presbyterian Hosp., 90 N.Y.2d at 288, 660 N.Y.S.2d 536, 683 N.E.2d 1 (dissenting opinion) (" '[W]hen a statute creates a new right and specifies the remedy for the enforcement of such right, the remedy is generally exclusive.' " (quoting McKinney's Cons.Law. N.Y., Book 1, Stat. § 240, at 413)). Plaintiff can facilitate the bringing of such an action by reporting the PC Defendants' allegedly fraudulent actions to the commissioner of health, as it is required by law to do. See N.Y.Ins.Law

---

**9.** If plaintiff were to allege and prove, on the other hand, that the practitioners themselves were unlicensed or that the services provided were non-medical and did not need to be licensed, plaintiff's insured would not have incurred basic economic loss under the Insurance Department's regulations.

**10.** Indeed, an insured may incur basic economic loss even if she receives services from one who is entirely unlicensed, if the need to receive treatment from an unlicensed health care provider is created by an insurance company's improper disclaimer of liability. See *Maida v. State Farm Mutual Automobile Ins. Co.*, 66 A.D.2d 852, 411 N.Y.S.2d 386 (N.Y.App.Div.1978).

§ 5108(c).[11]

■ The provisions of the Business Corporations Law allegedly violated by the PC Defendants do not explicitly create a private right of action. Under New York law, "a private cause of action is implied where it can be shown that plaintiff belongs to the class of legislatively intended beneficiaries and that a right of action would be clearly in furtherance of the legislative purpose." *CPC Intern. Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 276, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987) (finding no private right of action to enforce General Business Law § 352–c, which prohibits fraudulent and deceitful practices in the distribution, exchange, sale and purchase of securities). The threshold inquiry is "whether the plaintiff is one of the class for whose especial benefit the statute was enacted, ... [but] [i]mportant also are what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 325, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). Here, plaintiff does not satisfy the threshold factor: The prohibition on the corporate practice of medicine is designed to protect consumers of health care services, not insurers who pay for those services. *See E & B Mktg. Enter. Inc.*, 568 N.E.2d at 342 (describing danger of corporate practice of medicine as either over- or under-treatment); Adam Freiman, Note,

*The Abandonment of the Antiquated Corporate Practice of Medicine Doctrine: Injecting a Dose of Efficiency Into the Modern Health Care Environment*, 47 Emory L.J. 697 (1998) (describing development of corporate practice of medicine proscription and stating that "[t]he corporate involvement in medicine ... alarmed the leaders of the medical profession who maintained that such involvement would ... result[ ] in a lower quality of care"). Moreover, plaintiff has cited, and the Court has discovered, nothing in the legislative history of the relevant Business Corporation Law provisions that indicates that the legislature intended to create a private right of action to enforce those provisions. Senator Gioffre, in his memorandum describing the effects of those provisions (which is relied upon by plaintiff), describes in detail the supervision of the regents of the University of the State of New York over professional health corporations and potential disciplines. Nowhere does he state or imply that a private right of action was contemplated. *See* Sen. Anthony Gioffre Mem., S.8052, Ch.974, at 129–30 (1970) ("To provide a means of supervision of [the prohibition on the corporate practice of medicine], each professional service corporation must furnish to the appropriate state regulatory agency an annual statement listing the name and address of each shareholder, director and officer of such corporation and certifying that all such persons are authorized by law in New York to practice a profession such corpora-

---

**11.** Upon receipt of a claim, an insurer is not even permitted to inquire into the claimants' corporate structure. According to the No-fault claim procedure, an insurer must, upon receipt of a claim, either pay or deny the claim within thirty days or request "verification" of the claim within ten days. *See* N.Y.Ins.Law § 5106; 11 N.Y.C.R.R. §§ 65.15(d); *Presbyterian Hosp.*, 90 N.Y.2d at 282–85, 660 N.Y.S.2d 536, 683 N.E.2d 1.

The insurer may request verification within ten days of its receipt of a claim only by using "prescribed claims forms," which do not permit it to inquire into the claimant's control or ownership. 11 N.Y.C.R.R. § 65.15(c)(3); *Presbyterian Hosp.*, 90 N.Y.2d at 290, 660 N.Y.S.2d 536, 683 N.E.2d 1 (dissenting opinion) ("The forms [an insurer] may use to seek verification are 'prescribed' as noted by the majority.").

tion is authorized to practice."). Accordingly, because "plaintiff [does not] belong[ ] to the class of legislatively intended beneficiaries and ... a right of action would [not] be clearly in furtherance of the legislative purpose," *CPC Intern. Inc.*, 70 N.Y.2d at 276, 519 N.Y.S.2d 804, 514 N.E.2d 116, plaintiff has no private right of action to enforce New York's corporate form requirements. *See Deutsch v. Health Ins. Plan of Greater New York*, 573 F.Supp. 1443 (S.D.N.Y.1983) (Sand, J.) (dismissing health maintenance organization's claim for damages based on health professional's alleged fee-splitting in violation of New York Education Law § 6509–a because statute did not create private right of action for organization, even though organization claimed that illegal fee-splitting caused it to pay higher prices for medical services).

Section 409(c)(4) of the No-fault law, relied upon by plaintiff, does not affect this analysis. State law requires insurers to develop fraud detection plans, to establish special investigation units, and to include in their detection plans the "initiation of civil actions based upon information received by or through the special investigation unit." N.Y.Ins.Law § 409(c)(4). Assuming without deciding that this statute entitles plaintiff to bring civil actions to prosecute fraud claims, the fact that plaintiff is so entitled does not relieve it of its obligation to satisfy claims when it discovers allegedly fraudulent activity that is immaterial to those claims.

*Progressive Northeastern*, relied on by plaintiff, supports this Court's holding. In response to the service providers' argument that "the No–Fault law does not permit an insurer to inquire as to the corporate structure of a health care provider, much less deny a claim for services rendered by a licensed professional because of some perceived technical deficiency in the corporate form [i.e., illegal ownership and control]," the *Progressive Northeastern* court stated that the insurers "are not seeking to deny claims as a result of the corporate structure of the [service providers]. *Rather* plaintiffs seek to recover for *fraudulent* claims, which plaintiffs allege, were *facilitated* by the illegal corporate structure." Index No. C601112/00, at 20 (N.Y.Sup.Ct., July 25, 2001) (emphasis added). The facts in *Progressive Northeastern* that, if proved, would render the claims fraudulent were that the service providers submitted false claims for equipment that was not used and for services that were not provided. No claim was made or adjudicated.

Accordingly, to the extent that plaintiff seeks, in claim one, a declaration that neither State Farm nor any other person is or ever has been responsible to pay for services provided by the PC Defendants and an injunction enjoining the PC Defendants from rendering any further services, submitting to State Farm any request for payment for any service purportedly rendered in the past, or initiating or prosecuting against State Farm any legal proceeding seeking payment for services, its claim fails as a matter of law.[12] I decline to

---

**12.** The additional case law and opinion letters cited by plaintiff do not mandate a different result. In opinion letters dated January 11, and 26, 2000, the Department of Insurance states that, in its view, "when a provider of health benefits is given an assignment by an eligible injured person ... that assignee must be adhere [*sic*] to all applicable New York statutes which grant authority to provide health services in New York State. That includes all instances where ... a person or corporate entity must be properly licensed to perform services, so as not to engage in the corporate practice of medicine." (Jan. 26 Ltr. at 1.) The Department states that its revised regulations (which were held unconstitutional and never became effective) were designed to clarify this pre-existing requirement.

entertain plaintiff's request for a declaration that the Licensed Defendants were sham shareholders, directors, and officers of the PC Defendants, that the certificates of incorporation filed by the PC Defendants with the Department of Education were false, and that the certificates of authority obtained by the PC Defendants were fraudulently and unlawfully obtained, because such a declaration, if provided, would not "serve a useful purpose in clarifying and settling the legal relations in issue, [or] . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp.*, 417 F.2d at 1001.

In claims two and four, plaintiff seeks compensatory damages in the amount that it has paid to the PC Defendants for services provided to its insureds and punitive damages. These claims fail as a matter of law because, as set forth above, plaintiff has no private right of action to enforce the relevant provisions of the Business Corporations Law and because the PC Defendants' alleged violations of those provisions do not relieve plaintiff of its obligation to reimburse its insureds, or its insureds' assignees who are "providers of services," for covered basic economic loss.

█ In claim two, plaintiff asserts claims for common law fraud and fraudulent concealment. The elements of a claim for actual fraud "under New York law are a false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage." *Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp.

---

This letter is, by its terms, "informal and not binding on any court," and I decline to follow its prescriptions. Notably, another informal opinion letter of the Department of Insurance, dated November 29, 2000, which also is relied upon by plaintiff, was authored at the instance of lead counsel for the insurers in the *Progressive Northeastern* matter pending in state court, who provided the Department with a five-page exposition of the issues presented. (*See* Alea Reply Ex. 2.)

The additional state court decisions that plaintiff relies on are distinguishable. In *Fordham Med. Pain & Treatment, P.C. v. State Farm Mut. Ins. Co.*, Index No. 600403/00 (N.Y.Sup.Ct. Jan. 10, 2001), the court, stating only that "[o]bviously [the professional corporation] cannot be allowed to benefit from the fraudulent activity described" by the insurer, held that the insurer could deny a claim on the basis of the health care provider's improper ownership and control. The fraudulent activity described by the insurer included, however, billing for unnecessary services. In *Park Health Ctr. v. United Fin. Adjusting Co.*, 186 Misc.2d 667, 719 N.Y.S.2d 841 (2001), the court, relying on the Department of Insurance's January 11, 2000 opinion letter, held that the health care provider's failure to file an assumed name certificate with the Secretary of State as required by the General Business Law deprived it of standing to bill for reimbursement under the No–Fault Law. The plaintiff in *Park Health*, however, "failed to cite any cases, in the area of no-fault law, in support of its position," and this failure likely influenced the court's decision. State Farm's citation to the decisions of the New Jersey Superior Court, *see Allstate Ins. Co. v. Schick*, 328 N.J.Super. 611, 746 A.2d 546 (1999), *Allstate Ins. Co. v. Northfield Med. Cent.*, Docket No. MRS–L03228–99 (N.J.Sup. Apr. 27, 2001) (unpublished opinion), is inapt because those decisions do not consider New York's statutory and regulatory "maze" of a No–Fault scheme. *Presbyterian Hospital*, 90 N.Y.2d at 286, 660 N.Y.S.2d 536, 683 N.E.2d 1.

To the extent that these decisions conflict with this Court's holding, they are not authoritative pronouncements of New York law. *See United States ex rel. Mikes v. Straus*, 897 F.Supp. 805, 807 (S.D.N.Y.1995) (holding that federal court interpreting New York state law must "look first to decisions of the New York Court of Appeals to ascertain and interpret controlling New York law. . . . Absent a plain ruling by the state's highest court, the rulings of the intermediate courts are entitled to persuasive, if not decisive consideration. . . . On the other hand, when appellate division decisions do not speak unequivocally to the facts at issue, a federal court must endeavor to predict how the highest court of the state would resolve the issue" (internal quotations omitted)).

459, 469 (S.D.N.Y.1992). The elements of fraudulent concealment are "a relationship between contracting parties that creates a duty to disclose, knowledge of material facts by a party bound to make such disclosures, nondisclosure, scienter, reliance, and damage." *Id.* at 471. These claims fail because the alleged misrepresentations and concealed facts are not material to the claims submitted to plaintiff. Moreover, plaintiff was not damaged by its payment of claims that it was required to pay and which, in any event, were for reasonable and necessary medical expenses performed by licensed health professionals for covered persons and arising out of covered accidents.[13]

In claim four, plaintiff states a claim for unjust enrichment. To succeed on a claim of unjust enrichment, "plaintiff must show that (1) defendant was enriched (2) at plaintiff's expense, and (3) that 'it is against equity and good conscience to permit ... defendant to retain what is sought to be recovered.'" *Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 798, 686 N.Y.S.2d 186 (N.Y.App.Div.1999) (quoting *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 (1972)). Accepting plaintiff's allegations as true, plaintiff has done no more than pay claims it was required by law to pay. It is therefore, not against equity and good conscience to permit the PC Defendants to retain the benefits they received from plaintiff.

In any event, even if plaintiff were entitled to deny claims submitted by the PC Defendants on the basis of the PC Defendants' allegedly unlawfully obtained certificates of authority, it would not be entitled to recoup payments already made. New York courts are reticent to require the return of sums previously paid, or even to void one party's duty to perform under a contract, for lack of a statutorily required license. *See IHS Acquisition XV, Inc. v. Kings Harbor Care Center*, 1999 WL 223152 (S.D.N.Y.1999). This is especially true where the contracting party is not validly licensed but the party who actually provides services is so licensed. *See, e.g., Charlebois v. J.M. Weller Assocs., Inc.*, 72 N.Y.2d 587, 593, 535 N.Y.S.2d 356, 531 N.E.2d 1288 (1988) (refusing to void design-build contract even though the contracting party was not licensed engineer where work was performed by licensed engineer). As a "general rule ..., forfeitures by operation of law are disfavored, particularly where a ... party seeks to raise illegality as a sword for personal gain rather than a shield for the public good," *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 128, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992), and "[a]llowing parties to avoid their contractual obligation is especially inappropriate where there are regulatory sanctions in place to redress violations of the law." *Id.* Unless the violation at issue is *malum in se*, or evil in itself, and unless public policy mandates otherwise, a contract in violation of a statute should be enforced. *See id.; see also Benjamin v. Koeppel*, 85 N.Y.2d 549, 626 N.Y.S.2d 982, 650 N.E.2d 829 (1995) (holding legal services contract not void for failure of attorney to satisfy registration requirements).

The violation at issue here is not evil in itself and plaintiff plainly seeks to use the PC Defendants' violations as a sword for personal gain in order to recoup payments that it would, but for the alleged violations of the Business Corporations Law, indis-

---

13. Because plaintiff's claim fails on the merits, I need not consider the Moving Defendants' argument that plaintiff has not pled fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

putably have been required to pay. Regulatory sanctions that are available to the state "quite complementarily and proportionately protect the underlying public policy," especially since licensed health professionals performed all services. *Lloyd Capital,* 80 N.Y.2d at 129, 589 N.Y.S.2d 396, 603 N.E.2d 246.

■ Moreover, even if a party who has violated a licensing statute is unable to sue for enforcement of a contract, the party generally need not return compensation already paid. As Justice Cardozo explained:

> If the defendant were suing the plaintiffs for the price, and the court were to deny him relief, its refusal would not rest upon the ground that it would be against good conscience for him to have the money. The basis of its refusal would rather be that because of his illegal acts the law would leave him where it found him. In this case it finds him in a situation altogether different. He has received the money and the plaintiffs are trying to take it away from him. The law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive; it will not for that reason aid another in taking away from him that which good conscience entitles him to retain.

*Schank v. Schuchman,* 212 N.Y. 352, 359, 106 N.E. 127 (1914) (citations omitted); *see*

*also Goldman v. Garofalo,* 71 A.D.2d 650, 418 N.Y.S.2d 803 (N.Y.App.Div.1979) (denying plaintiff recovery of fees paid to defendant medical laboratory where defendant lacked requisite license and holding that "the parties, in these circumstances, should be left as they are," since plaintiff obtained benefit of work and there was no evidence that work was defective). Because the Moving Defendants likely could successfully sue for payment of unpaid claims, good conscience clearly entitles them to retain payments already made.[14]

■ In claim three, plaintiff states a claim for deceptive practices in violation of New York's General Business Law § 349. Section 349 makes unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y.Gen.Bus.Law § 349. To state a claim under § 349, a plaintiff must make a prima facie showing that the "defendant is engaging in an act or practice that is deceptive or misleading in a material way, ... that plaintiff has been injured by reason thereof, ... and that the acts [the plaintiff] complain[s] of are consumer-oriented in the sense that they potentially affect similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 27, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995); *see also S.Q.K.F.C., Inc. v. Bell Atlantic Tri-*

---

**14.** Plaintiff argues, citing *Kuriansky v. Professional Care, Inc.,* 147 Misc.2d 782, 787, 555 N.Y.S.2d 1 (N.Y.Sup.Ct.1990), that, because the services at issue are medical services, public policy requires that the PC Defendants turn over all benefits they have received. In *Kuriansky,* the State of New York contracted with the defendant to provide home personal care providers who were trained and qualified. The defendant created false entries in personnel files to conceal the fact that its providers were untrained and lacked state-mandated qualifications. *See id.* Holding that "[d]ocumented competency was an im-

portant and material part of the bargained-for consideration," the court permitted the state to recover payments previously made. Here, on the other hand, the services performed were performed by appropriately licensed personnel. In any event, the appellate division's holding in *Goldman* that the plaintiff, who had a pap smear performed by the unlicensed defendant laboratory, could not recover her payments belies plaintiff's claim that the health services context of this case requires that it be permitted to recoup its payments. 71 A.D.2d 650, 418 N.Y.S.2d 803.

*Con Leasing Corp.,* 84 F.3d 629, 636 (2d Cir.1996) (" '[C]onsumer-oriented' [is] defined as conduct that 'potentially affect[s] similarly situated consumers.' "). Section 349 was not intended to be a "sword to be wielded in business-versus-business disputes ... where the party asserting the claim is not acting in a consumer role." Richard E. Givens, Overall Scope of General Business Law §§ 349–350, Supplementary Practice Commentaries 166, 167 (McKinney Supp.1996). State Farm cannot establish that it was injured by the Moving Defendants' allegedly deceptive acts and practices nor that the acts complained of are "consumer-oriented" as defined by the Court of Appeals. *See Progressive Northeastern,* Index No. 601112-00, at 6 ("[T]he plaintiff insurers, who were the sellers of policies, were clearly not 'consumers' as contemplated by [§ 349]."). Its § 349 claims must, therefore, be dismissed.[15]

## Plaintiff's Motion

Plaintiff moves to dismiss the Counterclaimants' claims based on General Business Law § 349, arguing that the Counterclaimants have not alleged acts or practices engaged in by State Farm that have a broad impact on consumers at large, *i.e.,* that are consumer-oriented. As set forth above, consumer-oriented means, in the context of § 349, acts or practices that "potentially affect similarly situated consumers" *vis à vis* the claimant. *Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 27, 623 N.Y.S.2d 529, 647 N.E.2d 741. Consumer-oriented conduct "does not require a repetition or a pattern of deceptive behavior, ... but instead [the claimant] must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741. "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Id.*

In the context of insurance claim disputes specifically, courts consider the amount of the claim, the sophistication of the parties, and the uniqueness of the coverage contract in determining whether an insurer's allegedly deceptive conduct falls within § 349's scope. *See New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Greenspan, M.D. v. Allstate Ins. Co.,* 937 F.Supp. 288, 293 (S.D.N.Y.1996). In *New York University,* the Court of Appeals dismissed the plaintiff's § 349 claim against the defendant-insurer be-

---

**15.** Because I dismiss each of plaintiff's claims against the Moving Defendants, I need not consider the Moving Defendants' argument that State Farm's claims for damages are time-barred by its failure to deny the claims within thirty days, as required by the No-fault Law. *See* N.Y.Ins.Law § 5106 (requiring insurers to either pay or deny claims for benefits within thirty days of receipt of claims); *Presbyterian Hosp.,* 90 N.Y.2d *passim* (holding, by 4–3 decision, that if insurer fails to deny claim or request verification therefor within thirty-day statutory period, it is precluded from raising any defense except lack of coverage to liability in subsequent action brought to recover on claim). Nonetheless, I note my skepticism that an insurer is precluded from bringing an actionable fraud claim to recover benefits previously paid by its prior payment of the claims. The *Presbyterian Hospital* court was motivated by the fact that "No-fault reform was enacted to provide prompt, uncontested first-party insurance benefits" and to "avoid[ ] prejudice to insureds by providing for prompt payment or disclaimers of claims." *Id.* at 284–85, 660 N.Y.S.2d 536, 683 N.E.2d 1. That the court would preclude an insurer from raising most defenses, including most frauds, as a defense to a claim where the defense is not timely raised in order to ensure timely payment of claims does not imply that it would preclude an insurer from bringing suit at some later point, after the insured received his benefits, on the basis of actionably fraudulent behavior.

cause the contract that gave rise to the dispute was negotiated and unique, because the parties on each side were sophisticated, and because the coverage was for $10 million. The court held that, under such circumstances, the contract dispute was essentially private, not one that affected the consuming public at large. 87 N.Y.2d at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763. In *Greenspan*, on the other hand, the court held that, while a detrimental effect on health care providers alone would not bring a claim within § 349's purview, the "[d]eliberate erecti[on] of barriers to reimbursement and imposi[tion] [of] additional costs may frustrate [the No-fault Law's objective of efficient and inexpensive compensation of accident victims] and harm the public." 937 F.Supp. at 294. Likewise, in *Riordan v. Nationwide Mutual Ins. Co.*, 756 F.Supp. 732 (S.D.N.Y.1990), the court held that the plaintiffs'

> allegations that their injury resulted from [the insurer's] claim settlement practice and policy violative of the New York Insurance Law easily satisfies the elements of a claim under Section 349 since plaintiffs allege deceptive practices expressly proscribed by the Insurance Law. . . . [P]laintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders; in other words, the public at large. *Id.* at 738–39.

In the light of the foregoing, the Counterclaimants' claims do not satisfy § 349's essential elements. Under *Oswego*, conduct is "consumer-oriented" only if it affects consumers who are similarly situated to the claimant. In *Greenspan*, the court held that detrimental effects on health care providers alone do not bring a claim within § 349's purview. 937 F.Supp. at 294; *see also Four Winds of Saratoga, Inc. v. Blue Cross and Blue Shield of Central New York*, 241 A.D.2d 906, 660 N.Y.S.2d 236 (N.Y.App.Div.1997) (holding that service provider may not bring action against insurer due to lack of impact on consumers at large). The consumers of State Farm's services are its insureds, *see Riordan*, 756 F.Supp. at 739 (refusing to dismiss insureds' action under § 349), and the Counterclaimants are not such consumers, nor are they similarly situated to State Farm's consumers.

The Counterclaimants argue that their receipt of assignments of benefits from State Farm's insureds entitles them to, in effect, stand in the shoes of plaintiff's insureds. *See Craniofacial Pain Mgmt. v. New York Cent. Mut. Fire Ins. Co.*, 186 Misc.2d 309, 310, 718 N.Y.S.2d 130 (N.Y.City Civ.Ct.2000) (holding that assignment pursuant to 11 N.Y.C.R.R. § 65.15(j) "demonstrates a complete assignment of rights and interests by the assignor to the provider"). The Counterclaimants' answers only allege, however, that the Counterclaimants received State Farm's insureds' "right[s] to receive payment from" State Farm. (Sterling Ans. ¶ 23.) An assignment of contractual rights to receive payment does not automatically entail the right to assert claims not based on contract. *See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 151 (2d Cir.1995) ("Under New York law, the assignment of the right to assert contract claims does not automatically entail the right to assert tort claims arising from that contract."). Whether such an additional right is entailed depends on, among else, the specific language of the assignment instrument. *See id.* This instrument has not been provided to the Court, and the Counterclaimants do not allege in their answers that more than contract rights were assigned. Accordingly, the Counterclaimants'

claims based on § 349 are dismissed without prejudice.[16]

## CONCLUSION

For the foregoing reasons, plaintiff's claims against the Moving Defendants based on General Business Law § 349 are dismissed with prejudice. The remainder of plaintiff's claims against the Moving Defendants are dismissed without prejudice, and plaintiff is granted leave to amend its complaint to state valid claims describing actionable frauds within thirty days of the date of this opinion if it may do so within the confines of Rule 11 of the Federal Rules of Civil Procedure. The Counterclaimants' counterclaims based on § 349 of the General Business Law are dismissed without prejudice, and the Counterclaimants are granted leave to amend their answers to state valid § 349 claims within thirty days of the date of this opinion if they may do so within the confines of Rule 11 of the Federal Rules of Civil Procedure.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

---

16. The Counterclaimants also argue that, under *Greenspan*, they may state a claim under § 349 as long as State Farm's conduct potentially affects the general public. This argument ignores the fact that deceptive acts or practices are actionable under § 349 only if they affect consumers who are similarly situated to the claimant. *See Oswego*, 85 N.Y.2d at 27, 623 N.Y.S.2d 529, 647 N.E.2d 741.